[Civ. No. 19526. Fourth Dist., Div. Two. July 31, 1978.]

In re CINDY E., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CINDY E., Defendant and Appellant.

**COUNSEL**

Richard A. Daily for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MORRIS, J.**—Cindy E., a minor, appeals from orders of the juvenile court declaring her to be a ward of the court pursuant to Welfare and Institutions Code section 602 and committing her to the Youth Guidance Center for 45 days.

On June 14, 1977, the District Attorney of Orange County filed a petition in juvenile court requesting that appellant be declared a ward of the court pursuant to Welfare and Institutions Code section 602.[1] The petition alleges that on June 12, 1977, appellant willfully and unlawfully took a sweatshirt and wallet containing $145.82 from Jenny H. in violation of Penal Code section 487, subdivision 2 (grand theft).

On July 20, 1977, the district attorney filed another petition making the same request. This petition alleges that on April 16, 1977, appellant willfully and unlawfully bought and received two gold coins that had been stolen, knowing them to be stolen, and concealed and withheld the coins from the owner in violation of Penal Code section 496 (receiving stolen property).

Appellant was 13 years old at the time of both incidents.

A jurisdictional hearing was held on September 13, 1977. The allegations of both petitions were found to be true beyond a reasonable doubt, and appellant was declared to be a person described in section 602 (i.e., under 18 when she violated a law defining crime) and thus within the jurisdiction of the juvenile court. A dispositional hearing was set for October 14, 1977. On that date, appellant, one parent, and her attorney

---

[1]All references are to the Welfare and Institutions Code unless indicated otherwise.

appeared in court only to learn that the matter was set on the calendar for October 19, 1977. At the October 19 hearing, the court declared appellant to be a ward of the court, committed her to the Youth Guidance Center for 45 days, and ordered her to make restitution. Appellant appeals from both the September 13 and October 19 orders.

Appellant contends that the orders of the juvenile court must be reversed because (1) there was no showing that appellant knew the wrongfulness of her acts as required by Penal Code section 26, subdivision One, (2) a photographic identification of appellant was impermissibly suggestive denying her due process of law, (3) the juvenile court lacked jurisdiction to adjudicate wardship due to the passage of time, and (4) there was no express finding that continued custody of appellant by her parents would be detrimental.

I

A child under the age of 14 must appreciate the wrongfulness of her conduct in order to become a ward of the juvenile court under section 602. (*In re Gladys R.* (1970) 1 Cal.3d 855, 862 [83 Cal.Rptr. 671, 464 P.2d 127]; see Pen. Code, § 26, subd. One.) Penal Code section 26, subdivision One, provides that children under the age of 14 are incapable of committing crimes "in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness."

Appellant contends that the People failed to show that she knew the wrongfulness of her acts, arguing that the law requires the People to prove this fact "beyond a reasonable doubt." Apparently the requisite measure of proof for this matter has not yet been clearly articulated by the courts. Penal Code section 26, subdivision One, speaks in terms of "clear proof"; the cases interpreting that section, while emphasizing that the law requires knowledge of wrongfulness to be clearly demonstrated, have generally merely reiterated the language of the statute without elucidation.[2] (See, e.g., *In re Gladys R., supra,* 1 Cal.3d 855; *In re Harold M.* (1978) 78 Cal.App.3d 380 [144 Cal.Rptr. 744]; *In re Tanya L.* (1977) 76 Cal.App.3d 725 [143 Cal.Rptr. 31]; *In re Michael B.* (1975) 44 Cal.App.3d 443 [118 Cal.Rptr. 685]; *In re T.R.S.* (1969) 1 Cal.App.3d 178 [81 Cal.Rptr. 574]; *People* v. *Williams* (1936) 12 Cal.App.2d 207 [55 P.2d 223].)

[2]Apparently the issue is now before the California Supreme Court. *In re Tony C.* (Cal.App.) (hg. granted by Supreme Court Aug. 25, 1977 (Crim. 29408 ) held that the appropriate standard is clear and convincing proof.

It is unnecessary for us to decide this issue for, even assuming that knowledge of wrongfulness should be proven beyond a reasonable doubt, we must uphold the juvenile court's action. Although the court did not separately state the measure of proof applied to this issue, the record reveals that the court found the allegations in the petitions, which included allegations that appellant had the requisite criminal intent, to be proved beyond a reasonable doubt. Penal Code section 26, subdivision One, establishes a rebuttable presumption that a child under 14 years of age is incapable of entertaining criminal intent. (See, *In re Gladys R., supra,* 1 Cal.3d 855; see generally, Perkins, Criminal Law (2d ed. 1969) pp. 837-841.) The factual issue posed by this presumption was specifically brought to the court's attention by the arguments of counsel at the jurisdictional hearing. It is difficult to conceive how the court could be convinced beyond a reasonable doubt that appellant actually had criminal intent, if the court was not also equally convinced that appellant had the capacity to have such intent.

The record contains sufficient evidence to support the implied finding that appellant appreciated the wrongfulness of her acts. Appellant was 13 years old at the time she committed the acts alleged in the petitions. A child's age is a basic and important consideration (see, *In re Gladys R., supra,* 1 Cal.3d 855), and, as recognized by the common law, it is only reasonable to expect that generally the older a child gets and the closer she approaches the age of 14, the more likely it is that she appreciates the wrongfulness of her acts.[3] (See, *In re Harold M., supra,* 78 Cal.App.3d 380, 387.)

 Regarding the petition alleging that appellant stole a sweatshirt and wallet containing money, the evidence shows that on June 12, 1977, Jenny H. and three other girls, ranging in age from seven to ten, were leaving a grocery store where, on an errand for Jenny's mother, they had just purchased some items. Jenny had a sweatshirt tied around her waist, and in the pocket of the sweatshirt was her mother's wallet containing about $145. Appellant approached the four girls from the rear on her bicycle, startling them, and said, "Your brother owes me money." The four girls

---

[3]"According to the common law a child under the age of seven has no criminal capacity; one who has reached the age of fourteen has the same criminal capacity as an adult . . .; while between the ages of seven and fourteen there is a rebuttable presumption of criminal incapacity and conviction of crime is permitted only upon clear proof of such precocity as to establish a real appreciation of the wrong done. This presumption is extremely strong at the age of seven and diminishes gradually until it disappears entirely at the age of fourteen, . . ." (Perkins, Criminal Law (2d ed. 1969) p. 837, fns. omitted.)

gave varying reasons why that could not be so. Appellant then asked the girls their names and where they lived, and the girls answered. Then, saying "That looks like my sister's sweatshirt that got ripped off," appellant grabbed Jenny's sweatshirt. After a brief tugging match, appellant won the sweatshirt and quickly rode away on her bicycle.

Appellant's expressed displeasure about her sister's sweatshirt being "ripped off" indicates an understanding that ripping off someone's property, as she did to Jenny's sweatshirt, wrongs the rightful owner. Moreover, upon wresting the sweatshirt from Jenny and the other girls, appellant sped away. The conduct and statements of a child during and after the commission of the criminal acts may evidence an awareness of the wrongfulness of the acts (see, *In re Gladys R., supra,* 1 Cal.3d 855, 867; *In re Harold M., supra,* 78 Cal.App.3d 380, 388-389; *In re Tanya L., supra,* 76 Cal.App.3d 725, 729-730), and appellant's flight does just that.

Regarding the petition alleging that appellant received stolen property, i.e., 2 gold coins, the evidence shows that in March of 1977, 12-year-old Cynthia J. showed appellant her father's coin collection, which was kept in a box in a bedroom closet. Cynthia also told appellant that she and her family would be gone for the Easter vacation. After returning from the vacation, Mr. J. discovered that two gold coins were missing from his collection. Approximately one or two weeks after Easter, appellant sold two gold coins, identical to those stolen from Mr. J., to two employees of a local liquor store, telling them that the coins had been willed to her by her grandfather. Cynthia telephoned appellant, and said that she knew, and a lot of other people knew, that appellant had taken the coins, and asked where they were. Appellant replied that she had sold them to the two liquor store employees. In a later conversation, appellant told Cynthia that while she had sold the coins, she was not the one who originally took them.

Appellant's fabrication of a story to legitimate her possession of the coins to the two store employees indicates an awareness that she had obtained the coins wrongfully. Her attempt to shift some of the blame to others and minimize her own involvement also suggests that she knew that what had happened was wrong.

■ Appellant complains that using evidence of facts that constitute an element of the crime or of acts performed during the commission of the crime to show knowledge of wrongfulness is "bootstrapping." She suggests that the "clear proof" requirement of Penal Code section 26,

subdivision One, imposes an additional burden on the People that cannot be met merely by presenting evidence of the events that gave rise to the petitions. This is said to be the only logical interpretation; since "clear proof" does not relate to the measure of proof (that being "beyond a reasonable doubt" according to appellant), it must define the type or quality of evidence required. Appellant finds support for her argument in the statement in *In re Gladys R., supra,* 1 Cal.3d 855, at page 864, that "[a] juvenile court must therefore consider a child's age, experience, and understanding in determining whether he would be capable of committing conduct proscribed by section 602." Interpreting this to mean that the court must receive and consider evidence of factors independent of the acts charged in the petitions, appellant objects that there was no evidence regarding her intelligence, education, experience, or moral frames of reference.

We see no reason to engraft this additional requirement on the normal showing that must be made under section 602. As long as the burden of proof on the issue of knowledge of wrongfulness is satisfied, it would be an idle act, not to mention a wasteful one, to require the court to take evidence on each and every one of the items mentioned by appellant. In some cases perhaps evidence regarding all of the factors is necessary to satisfy the burden of proof; in others the age of the child, observation of her in the courtroom, and evidence of her conduct during the crimes charged in the petition are entirely adequate to establish that she knew that her acts were wrong.

## II

Several hours prior to the jurisdictional hearing, the deputy district attorney interviewed the witnesses (i.e., Jenny H. and two of the girls present at the time of the theft) who later testified regarding the petition alleging that appellant stole a sweatshirt and wallet containing money. During this interview, he showed the witnesses a photograph of appellant and asked if the girl in the photograph was the person who took the sweatshirt and wallet. The witnesses replied affirmatively. No other photograph was shown to them. At the jurisdictional hearing, the witnesses positively identified appellant as the perpetrator of the theft.

Appellant contends that the photographic identification was impermissibly suggestive denying her due process of law. The standard to be applied in such cases was described by the United States Supreme Court as follows: "[E]ach case must be considered on its own facts, and

. . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967, 971]; see *People* v. *Rist* (1976) 16 Cal.3d 211, 217-218 [127 Cal.Rptr. 457, 545 P.2d 833].)

Undoubtedly the showing of a single photograph is a suggestive procedure (see *Manson* v. *Brathwaite* (1977) 432 U.S. 98, 110 [53 L.Ed.2d 140, 151, 97 S.Ct. 2243, 2250]), but, reviewing the totality of the circumstances, including factors indicating the reliability of the identification, we conclude that in the instant case this procedure produced no substantial likelihood of irreparable misidentification (see *id.*, 432 U.S. at pp. 112-117 [53 L.Ed.2d at pp. 153-155; 97 S.Ct. at pp. 2252-2254]). First, long before being shown the single photograph by the deputy district attorney, Jenny H. identified appellant as the perpetrator of the theft by selecting her photograph from among the many in the Rancho School Year Book. Second, the ability of the witnesses to make an accurate identification unaffected by the suggestive procedure is indicated by their opportunity to view the perpetrator at the time of the incident, their degree of attention, and their level of certainty in identifying the perpetrator at the hearing. The witnesses engaged in a tense conversation with appellant in broad daylight from a short distance for about three to five minutes, and then struggled with appellant over the sweatshirt for about thirty seconds. They had ample opportunity to view appellant, and their degree of attention can hardly be passed off as that of casual observers. Moreover, at the hearing, the identification of appellant by each witness, out of the hearing of the others, was positive and unequivocal.

## III

At the conclusion of the September 13, 1977, jurisdictional hearing, the court scheduled the dispositional hearing, with the agreement of appellant's counsel, for October 14, 1977. Appellant appeared on that date only to discover that the matter was calendared for October 19, 1977. At the October 19 hearing appellant objected that the court lacked jurisdiction and participated in the hearing only upon a stipulation that the jurisdictional objection would be preserved on appeal.[4]

---

[4]Appellant's objection is to the court's jurisdiction to act, in contrast to its jurisdiction over the subject matter and the parties. (See, 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 179, pp. 706-708.)

Section 657 directs the clerk of the juvenile court to set the petition for hearing within 30 days of its filing, unless the minor is in custody at the time of filing, in which case the petition must be set for hearing within 15 judicial days from the date of the detention order. In this case, the continuance of the jurisdictional hearing beyond this limit was with appellant's consent.

Section 702 provides that after the jurisdictional hearing the court "may continue the [dispositional] hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance, and if the minor is not detained, it may continue the hearing to a date not later than 30 days after the date of filing of the petition. The court may, for good cause shown continue the hearing for an additional 15 days, if the minor is not detained."

Appellant acknowledges that by her agreement she waived any objection to the court's exercise of jurisdiction up to October 14, 1977, but argues that after that date, without her waiver, the court lacked jurisdiction. The People admit that the five-day delay (from Oct. 14 to Oct. 19) in holding the dispositional hearing technically violated section 702, but suggest that, since neither the statutes nor the court rules disclose the consequences of holding a hearing beyond the prescribed date (see §§ 657, 702; Cal. Rules of Court, rules 1351, 1356), we should view the error in compliance as procedural error only, not requiring a reversal unless a miscarriage of justice will result. The People cite *People* v. *Ford* (1966) 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132] and other cases that hold that failure to impose sentence within the time prescribed by Penal Code section 1191 is not jurisdictional, but is procedural error only, and that on appeal there should be no reversal so as to allow a new trial under Penal Code section 1202 unless prejudice is shown. (See *People* v. *Fritz* (1969) 275 Cal.App.2d 866, 872-873 [80 Cal.Rptr. 506].) Appellant, recognizing that the dispositional phase of a juvenile court proceeding is at least conceptually akin to the pronouncement of judgment in a criminal matter, nevertheless argues that a more persuasive analogy can be found in other provisions of the Juvenile Court Law, particularly section 252, which contains time limits for application for rehearing that appear to have been held to be jurisdictional (see *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406]), or in the provisions of Code of Civil Procedure section 657 specifying time limits for granting a new civil

trial, which have also been held to be jurisdictional (see *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315]).

We think that inadvertent failure to comply with the time requirements of section 702 should not be viewed as an act in excess of jurisdiction.

Appellant's suggested analogies are unpersuasive. Unauthorized acts after judgment, which is what is involved when a court fails to comply with Code of Civil Procedure section 657's time limits for granting a new trial, present a little different problem than unauthorized acts during a proceeding. The latter will *at most* constitute an act in excess of jurisdiction. But after judgment the court entirely loses jurisdiction of the subject matter when either the cause is taken over by a reviewing court or, by the lapse of time for appeal or other direct attack on the judgment (e.g., by motion for new trial), the judgment becomes final. (See generally, 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 218, pp. 750-751.) Obviously any unauthorized act after judgment, e.g., one beyond the time limits of Code of Civil Procedure section 657, will generally be a departure from jurisdiction and not mere error. (See, *id.,* at § 219, pp. 751-752.) Failure to comply with the time limits for rehearing contained in section 252 (former § 558), discussed in *In re Edgar M., supra,* 14 Cal.3d 727, basically corresponds with an unauthorized act after judgment.[5] In both of the situations raised by appellant, the time limit is specifically designed to limit the period during which a cause, once decided, nevertheless remains pending and unresolved, i.e., the period during which the court continues to exercise jurisdiction over the cause.

In contrast, the time limits of section 702, while aimed at expediting the proceedings, apply before any decision regarding disposition has been reached and thus do nothing to limit the period between the time judgment is rendered and the time it becomes final and the court loses jurisdiction. The Legislature's obvious intent in directing both the jurisdictional and dispositional hearings to be held within a certain number of days from the filing of the petition was to assure that minors would be afforded an opportunity to be heard within a reasonable period of time and that juvenile matters would be promptly resolved. (See 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 292, pp. 4797-4798; Thompson, Cal. Juvenile Court Deskbook (1976) §§ 3.4,

---

[5]This is somewhat more problematic in that the rehearing may be from the decision of a referee, which, for various reasons, is not exactly the same as a judgment of the court. (See, *In re Edgar M., supra,* 14 Cal.3d 727.) These differences do not affect the above analysis, however.

3.7, pp. 12, 14-15a.) There is no indication, however, that the Legislature intended that the lapse of time and failure of the court to hold a dispositional hearing within the time fixed should oust the court of further jurisdiction to proceed in the case and render a dismissal necessary. Section 702 is more properly characterized as a procedural statute, prescribing the procedure to be followed in conducting the jurisdictional and dispositional hearings. The comparison with Penal Code section 1191, which specifies the time for imposing sentence, is well taken.

■ We hold that the failure to comply with the time limits of section 702 is procedural error only, and in the absence of a miscarriage of justice, there should be no reversal. Appellant either requested or consented to continuances spanning 122 days on the June 14 petition and 86 days on the July 20 petition and has not disclosed any prejudice suffered as a result of the additional 5-day delay in holding the dispositional hearing. The delay was apparently the result of an unintentional clerical error. Under such circumstances we fail to see any miscarriage of justice.

## IV

California Rules of Court, rule 1372(b), which applies to juvenile cases petitioned under sections 601 and 602, reads in pertinent part as follows: "No ward shall be taken from the physical custody of a parent or guardian unless the court finds one of the following: [¶] (1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor; [¶] (2) That the minor has been tried on probation in the physical custody of a parent or guardian and has failed to reform; or [¶] (3) That continued custody by the parent or guardian would be detrimental to the minor and the welfare of the minor requires that custody be taken from the parent or guardian."

■ The court, apparently electing to proceed under subdivision (3), found that the "welfare of the minor requires that custody be taken from parents," but made no express finding that continued custody by the parents would be detrimental to the minor. Appellant contends that that portion of the disposition order removing her from the custody of her parents and committing her to the Youth Guidance Center must be reversed for lack of proper findings.

Rule 1372(b) of the California Rules of Court is based on section 726 and *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244]. (See Advisory Committee comment, Cal. Rules of Court, rule 1372.)

Section 726 states in pertinent part: "[N]o ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts: [¶] (a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor. [¶] (b) That the minor has been tried on probation in such custody and has failed to reform. [¶] (c) That the welfare of the minor requires that his custody be taken from his parent or guardian."

The California Supreme Court stated in *In re B. G., supra,* 11 Cal.3d 679 that "[t]he language of section 726 should be interpreted in *pari materia* with the requirement of [Civil Code] section 4600 that in any proceeding in which custody is at issue, an award to a nonparent against a parent claim requires a finding of detriment. Under this interpretation, subdivisions (a) and (b) of section 726 present specific instances of detriment justifying an award of custody to a nonparent; the term 'welfare of the minor' in subdivision (c) encompasses a requirement that an award of custody to the nonparent rests upon a finding that parental custody would be detrimental." (*Id.,* at p. 696, fn. 25.)

The People suggest that rule 1372(b) should be construed as a restatement of section 726 and submit that since the court found that the welfare of appellant required temporary removal from the custody of her parents, it would merely be a matter of semantics to require the court also expressly to find that the parents' continued custody would be detrimental.

It would take an ostrich-like approach to declare rule 1372(b) merely a restatement of section 726 and at the same time ignore the impact of *In re B. G., supra,* 11 Cal.3d 679. The rule is clearly grounded in that decision, and, in view of the rule's unequivocal and express requirement, we cannot say that it is no more than a matter of semantics to require a finding of detriment.

Prior to the adoption of rule 1372(b), there was some confusion in the cases as to what kind of findings would suffice. *In re Willy L.* (1976) 56 Cal.App.3d 256 [128 Cal.Rptr. 592] held that a finding that was less specific and more conclusionary than that in the instant case was

adequate to support a commitment to the Youth Authority.[6] The court also noted that the requisite finding may be obtained from the reporter's transcript in lieu of an entry in the minute order. *In re Lawrence B.* (1976) 61 Cal.App.3d 671 [132 Cal.Rptr. 599], on the other hand, held, in a two to one decision, that an order supported only by findings couched in the language of section 726 is invalid because such findings are too conclusionary in nature.[7] The California Supreme Court later disapproved this portion of *Lawrence B.* and, quoting from the dissenting opinion in that case, stated that section 726, by its terms, requires a finding *only* in the language of the statute and that no additional findings are mandated by any constitutional provision, statute, or decisional law of this state. (*In re John H.* (1978) 21 Cal.3d 18, 24-25 [145 Cal.Rptr. 357, 577 P.2d 177].)[8] In the meantime, another Court of Appeal decision, stepping gingerly between *Willy L.* and *Lawrence B.*, discussed those two cases and then struck out on a different course. The court in *In re Robert W.* (1977) 68 Cal.App.3d 705 [137 Cal.Rptr. 558] assumed that an order committing a minor to the Youth Authority should be considered error because of the lack of findings more detailed than in the language of sections 726 and 734,[9] and then decided that such error does not

[6]The disposition order stated: " 'The Court makes its findings pursuant to the provisions of Section 727c [*sic*] Juvenile Court Law.' " (*In re Willy L., supra,* 56 Cal.App.3d at p. 266.) In addition the juvenile court judge verbally stated: " 'Pursuant to Section 726 of the Welfare and Institution[s] Code the minor is ordered—is removed from the custody of his parents.' " (*Id.*)

[7]"The court's findings were as follows: 'THE COURT FINDS: [¶] Welfare of minor requires that custody be taken from parents or guardians. [¶] The court finds that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefitted by the reformatory educational discipline or other treatment provided by the Youth Authority. The Court finds that the minor comes under the provisions of Sec. 726 a & c WIC Code.' " (*In re Lawrence B., supra,* 61 Cal.App.3d at p. 675 (dis. opn. of Jefferson (Bernard), J.).)

[8]Rule 1372(b) became effective July 1, 1977. *John H.* was decided after that date, but the rule is not mentioned in the opinion. Apparently the reason is that the hearing in the case took place in 1975, long before the rule became effective.

However, we find a little puzzling the statement that no findings in addition to those specified by section 726 are mandated by any decisional law in this state. Certainly the Judicial Council, when it adopted rule 1372(b), felt (and not without good reason) that *In re B. G., supra,* 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244] required a finding of detriment in addition to the finding specified by section 726, subdivision (c). (See Advisory Committee comment, Cal. Rules of Court, rule 1372.) Since the matter of a finding of detriment was not mentioned in *John H.*, we assume that the issue was never raised and that the court's comments were not intended to be interpreted in reference to that matter (and certainly were not intended as a repudiation of the dictates of *In re B.G.*).

[9]"The findings of the juvenile court . . . were in the following language: 'THE COURT FINDS: [¶] Welfare of minor requires that custody be taken from parents or guardians. . . . [¶] The Court finds that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefitted by the reformatory

automatically constitute prejudicial error requiring a reversal and found that, in light of the probation officer's report detailing the minor's staggering police, probation, and court history, the failure of the court to make the necessary findings constituted harmless error because it was not reasonably probable that a result more favorable to the minor would have been reached in the absence of such error.

All of these cases arose before July 1, 1977, the effective date for the juvenile court rules, including rule 1372(b). With the adoption of rule 1372(b), most of the confusion disappeared and the requirements for findings became manifest; pursuant to subdivision (3) of the rule, courts must now find that the welfare of the minor requires that custody be taken from the parents *and* that continued custody by the parents would be detrimental to the minor.

We are therefore compelled to conclude that the court's failure to comply with rule 1372(b), and make a finding regarding the detrimental effect of continued custody by the parents, was error. ■ However, following the approach of *Robert W.*, we have decided that, in view of the record in the instant case, the error must be regarded as harmless. Appellant committed the acts alleged in the petitions herein while she was on probation for six months as a result of a negotiated disposition of two prior petitions, which involved vehicle theft and petty theft. Also, between the jurisdictional and dispositional hearings, appellant became involved in an altercation at school with Cynthia J. (who had testified against appellant), resulting in a police report, suspension from school, and an application for a petition alleging that appellant violated Penal Code sections 240 and 242 (assault and battery). The court's comments at the dispositional hearing indicate that the court perceived appellant's problem to be her inability to deal with certain problems in the home environment and her tendency to get into difficulties because of her association with the wrong people. Clearly, primary factors in committing appellant to the Youth Guidance Center were her failure to succeed on probation in her present surroundings and the need to impress upon her

educational discipline or other treatment provided by the Youth Authority.' Although not a part of the formal findings and order of commitment, the trial court stated orally at the dispositional hearing that it was making findings of fact and, among the findings recited was the following: 'The welfare of the minor and the safety and protection of the public cannot be adequately safeguarded without the removal of the minor from the custody of his parents.' The court also at the dispositional hearing orally announced that it was making conclusions of law. A conclusion of law orally recited was the following: '[T]hat the removal of the minor from the minor's parents is required to adequately safeguard the welfare of the minor and the safety and protection of the public.' " (*In re Robert W.*, *supra*, 68 Cal.App.3d at p. 718.)

that she cannot continue to act as she has without consequences. Since appellant obviously falls within the scope of rule 1372(b)(2), which refers to a minor who has been tried on probation in the physical custody of a parent and has failed to reform, we conclude that it is not reasonably probable that a result more favorable to appellant would have been reached in the absence of the error. That the court also made no finding under subdivision (2) of rule 1372(b) is of no consequence. The court's error consisted of its failure to make an appropriate finding under *any* of the provisions of rule 1372(b). The fact that the court apparently attempted to apply subdivision (3) of the rule does not mean that, in analyzing whether the error was harmless, we must ignore another obviously applicable subdivision.

The orders are affirmed.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied August 21, 1978.