[Crim. No. 33111. Second Dist.,Div. Five. Apr. 24, 1979.]

In re CLYDE H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CLYDE H., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Adrian K. Panton, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Vincent J. O'Neill, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—The juvenile court found appellant to be a person described by Welfare and Institutions Code section 602 in that he committed assault (Pen. Code, § 242) by throwing a brick at Maria Lopez. Suitable placement was ordered.

At the time of the offense, March 10, 1978, appellant was 11 years old, and the victim, Maria Lopez, was 4 years old. Maria's mother was in her yard hanging clothes where her children were playing. Maria came running up to Mrs. Lopez crying and with her head bleeding. A piece of brick, which had not been there before, was lying on the ground. Maria. said that appellant had thrown the brick at her, and she pointed him out. Mrs. Lopez saw appellant walking down the alley next to the yard. She was familiar with him, having seen him in the area daily for about a year.[1]

On numerous occasions, Mrs. Lopez had seen appellant throwing rocks or bottles at her family at the house. When she would come out, he would run away. Just that morning, appellant was chasing her children with a stick outside her house. As he walked away, appellant threw the stick to Mrs. Lopez.

Sam Castagna had been living with appellant and appellant's mother for nine years. He had talked to appellant a number of times about the problems appellant had in the community. From time to time he had told appellant never to hit other children. "When a parent would come and complain, said that Clyde had thrown something, I told Clyde it was wrong to be throwing." Appellant sometimes said that the other children hit him first. Mr. Castagna told appellant that two wrongs never make a right and that it is wrong for him to hit back. Mr. Castagna continued to get reports, however, that appellant was hitting other children. The latest

---

[1]At the time Maria was struck with the brick, her little brother Jose, age two, was playing next to her. He also came crying to Mrs. Lopez and holding his head, but he bore no visible marks of injury. A second paragraph of the petition alleging assault on Jose was dismissed.

incident about which he and appellant had talked occurred shortly before this one, at the end of February. On that occasion, appellant denied that he threw any rock and Mr. Castagna accepted appellant's explanation.

In Mr. Castagna's opinion, appellant only partially understood what Mr. Castagna had told him about hitting other children. Appellant would say, "I'm sorry"; but Mr. Castagna "didn't believe the boy actually understood the seriousness of what he was doing, of how he could injure somebody by throwing something. To him, he was just playing." Appellant was "slow in learning" and did "not completely" know the difference between right and wrong. Appellant behaved himself around the house and around Mr. Castagna, but not when he got outside.

Dr. (Ph.D.) Vasanti Burtle, a psychologist, examined appellant in connection with this case. Appellant told her that he had been told by his parents and at school that it was wrong for him to engage in these acts. Dr. Burtle asked appellant to draw a picture of himself doing something good. He drew a picture of himself throwing a rock. When Dr. Burtle asked him, "Is that a good thing to do?" he "retracted and said no, and he took back the drawing. And he put in a hanging lamp and a carpeting on the floor, and he changed the title to Clyde dancing." When she asked him to draw a picture of himself doing something bad or wrong, he drew a picture of himself holding a rock. Appellant said juvenile hall was a place for bad people who go to court and that people who do bad things go to jail. He said it was fun to throw rocks.

Dr. Burtle was informed that appellant's I.Q. was 67. He did not appear to be retarded organically, but he was far behind developmentally. By this Dr. Burtle meant that appellant lacked the ability to conceptualize or generalize. He could not abstract, but thought in concrete terms like a first grader.[2] His hyperactivity also made it difficult for him to learn. Appellant "will learn by example and apply to that example, I think. He cannot generalize, so if he hits A with a rock, maybe, and I say maybe, he will learn that he is not supposed to hit A with a rock, but he may hit B with a rock." In Dr. Burtle's opinion, appellant "cannot abstractly distinguish between right and wrong, nor can he appreciate the wrongness of an act prospectively that is in the future." However, on questioning by the court, Dr. Burtle stated that appellant "understands [that it is wrong to throw rocks at people] now, I

[2]Many of the psychologist's comments about appellant's ability to abstract were directed toward the issue of his ability to understand his *Miranda* rights. This is not an issue on appeal since the trial court ruled that appellant lacked such capacity and excluded appellant's statements to the police.

think. It's been repeated so often to him. . . . [¶] By now he does, I hope." She further conceded, in connection with the pictures appellant had drawn, that appellant "could have a feeling . . . that even though he knows it's wrong to throw rocks at people he could feel good about throwing rocks at people."

## DISCUSSION

Appellant contends the evidence is insufficient to show that he knew the wrongfulness of his act. Penal Code section 26, subdivision One, provides: "All persons are capable of committing crimes except those belonging to the following classes: [¶] One—Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." *In re Gladys R.,* 1 Cal.3d 855, 862 [83 Cal.Rptr. 671, 464 P.2d 127], holds that this standard must be satisfied to sustain a finding that a minor under the age of 14 comes within Welfare and Institutions Code section 602. In sustaining the petition, the trial court found "that the Gladys R. issue has been met."[3] We hold the evidence is sufficient to sustain the trial court's finding.

Preliminarily, appellant contends that the statutory standard of "clear proof" set forth in Penal Code section 26 must, as a matter of constitutional law, be interpreted to mean "beyond a reasonable doubt," because a child's capacity to commit a crime is "intertwined" with the determination that he did commit a crime (citing *In re Winship,* 397 U.S. 358, 363-364 [25 L.Ed.2d 368, 374-375, 90 S.Ct. 1068]). This argument lacks merit. Since the Legislature may constitutionally require an adult criminal defendant to prove insanity by a preponderance of the evidence (*People* v. *Drew,* 22 Cal.3d 333, 348-349 [149 Cal.Rptr. 275, 583 P.2d 1318]), it may constitutionally set forth by statute the standard by which a minor of a given age shall be found capable of committing a crime. The trial court properly utilized the statutory standard of "clear proof." (See *In re Gladys R., supra,* 1 Cal.3d at p. 867; *In re Cindy E.,* 83 Cal.App.3d 393, 398 [147 Cal.Rptr. 812].)

It is the trier of fact, not the appellate court, which must apply the statutory standard. Our function is simply to determine whether there is

---

[3]An additional petition was filed under the same case number and was heard with this case. The evidence as to that petition indicated that appellant compelled a 7-year-old boy to orally copulate him. Since no evidence was introduced as to appellant's understanding of right and wrong on sexual matters, the court found the evidence as to that petition insufficient.

substantial evidence to support the conclusion of the trier of fact. (*People v. Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382]; *In re Roderick P.,* 7 Cal.3d 801, 808-809 [103 Cal.Rptr. 425, 500 P.2d 1].) ■ The evidence in this case supports the trial court's conclusion that appellant knew the wrongfulness of his act.

The record shows that this was only one of numerous instances of appellant's throwing rocks at other children. He had been told numerous times that this was wrong. Mr. Castagna, appellant's guardian, had talked to appellant about this many times, because it had been a problem in the community, and had emphasized to appellant that it was wrong. The psychologist also, despite her general opinion that appellant had difficulty in applying moral teachings to future conduct, conceded that through numerous experiences and repeated warnings on the subject, appellant could learn that it was wrong to throw rocks at people. She stated that appellant "understands [that it is wrong to throw rocks at people] now, I think. It's been repeated so often to him. . . . [¶] By now he does, I hope." Appellant's prior involvement in similar offenses and the repeated warnings to him that such conduct was wrong were compelling circumstances from which the trial court could infer the requisite knowledge. (*In re Carl L.,* 82 Cal.App.3d 423, 424-425 [147 Cal.Rptr. 125]; *In re Harold M.,* 78 Cal.App.3d 380, 389 [144 Cal.Rptr. 744].) As sole judge of the credibility of witnesses and the weight of the evidence, the trial judge was not required to accept any inference from conflicting evidence that appellant did not understand these warnings. (See *In re Patrick W.,* 84 Cal.App.3d 520, 527 [148 Cal.Rptr. 735]; *In re Carl L., supra,* 82 Cal.App.3d at p. 425.)

There was additional evidence that appellant knew such conduct was wrong. Mrs. Lopez described past similar incidents of rock throwing where appellant ran away after she appeared. This suggests consciousness of guilt. (See *In re Harold M., supra,* 78 Cal.App.3d at p. 388.) Appellant left the scene on the instant occasion also. Furthermore, in discussing previous incidents with Mr. Castagna, appellant said, "I'm sorry." The evidence supports the trial court's findings.

## DISPOSITION

Pursuant to Welfare and Institutions Code section 726 the court found that the welfare of the minor requires that his custody be taken from his parent or guardian, and appellant was placed in the custody of the probation officer for suitable placement for a maximum of six months. (See Welf. & Inst. Code, §§ 726, 727, 730.)

 Appellant contends that under rule 1372(b)(3), of the California Rules of Court the trial court was required to find not only that the welfare of the minor required that custody be taken from the parent or guardian, but also that continued custody by the parent or guardian would be detrimental to the minor. Appellant contends the trial court failed to make such finding of detriment and that the disposition order must therefore be reversed. Respondent counters by arguing (1) that the court in substance made such finding in its remarks at the disposition hearing and (2) that any error in failing to make a finding of detriment is harmless since it is not reasonably probable that the court's finding on the detriment issue would have been favorable to appellant's remaining in the home.

The probation officer's report, which was considered by the trial court, indicated that appellant had been involved in numerous rock throwing incidents around the neighborhood and that many neighbors in the community felt he was an intolerable nuisance. One school teacher related that her entire classroom of students was afraid to go home from school because appellant would wait for the students and throw rocks at them.

Appellant was in a special school for children with learning disabilities and emotional problems but was doing poorly and was out of control in the classroom. His teacher believed that appellant was in desperate need of psychiatric help, was severely disturbed and in most cases out of control. The probation officer concluded that the public school system had nothing further to offer appellant.

This was appellant's first appearance in juvenile court. Appellant's mother had been on probation for four years for involuntary manslaughter in shooting a boyfriend. However, she had recently completed probation. Appellant was the 15th of 16 children born to his mother. Since 1968 she had been living with Mr. Castagna, who was not the father of any of the 16 children. Appellant's statements to the probation officer and hearsay evidence from neighbors indicated that the mother had an alcohol problem and that sometimes when the mother drank, Mr. Castagna would take appellant to a motel. Appellant's mother and Mr. Castagna told the probation officer that appellant's problems in the community were being blown out of proportion and that nothing was done when other children attacked him. Appellant's mother and Mr. Castagna both wanted appellant to remain at home. Mr. Castagna thought appellant might have emotional problems but wanted him in a residential school setting where he could come home on weekends.

It was the probation officer's opinion that "[c]onditions at home are poor and it is felt that the mother is incapable of supervising or disciplining the minor. . . . The mother's common law spouse, appears to have some insight to the minor's problems but does appear to be overly protective. . . . [¶] In view of the above, it is felt that it would not be possible to rehabilitate the minor at home. He needs a more structured and secure setting that a suitable placement offers as well as therapy." The probation officer recommended suitable placement.[4]

At the disposition hearing the trial court commented: "I think Clyde needs an opportunity to do some growing and I feel that he would be [in a] much better position to be properly nurtured in an environment other than his home at this particular time. Reading in the probation report seems to indicate that the home situation does leave something to be desired. I hope that [appellant's mother] would involve herself in a counseling program, so that she would have a greater understanding of what Clyde's needs are and, perhaps, if they were counseled together, along with Mr. Castagna, who I appreciate is certainly a positive influence on Clyde's life, I think that Clyde might meet with much better success in the community." The court declared appellant a ward and ordered custody taken from his parents and guardians for suitable placement by the probation officer.

Rule 1372(b) of the California Rules of Court provides in part: "No ward shall be taken from the physical custody of a parent or guardian unless the court finds one of the following: [¶] (1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor; [¶] (2) That the minor has been tried on probation in the physical custody of a parent or guardian and has failed to reform; or [¶] (3) That continued custody by the parent or guardian would be detrimental to the minor and the welfare of the minor requires that custody be taken from the parent or guardian." (See *In re Cindy E., supra,* 83 Cal.App.3d 393, 408.)

Appellant argues that the court failed to make a finding under subdivision (3) of rule 1372(b) while respondent argues that the finding need not be in the exact words of the rule and that the court in substance made a finding of detriment. (See *In re John S.,* 83 Cal.App. 3d 285, 291-292 [147 Cal.Rptr. 771]; *In re Ricardo M.,* 52 Cal.App.3d 744, 750 [125 Cal.Rptr. 291].) Even assuming, however, that the court's language was too mild to constitute a finding of detriment, any such error was

---

[4]The court also considered the report of a social worker, but this report did not draw any conclusions about whether appellant should remain in the home.

harmless, as it is not reasonably probable such finding, if made, would have been in favor of continued parental custody. (*In re Cindy E., supra,* 83 Cal.App.3d at pp. 408-409 (applying harmless error rule); see *In re Robert W.,* 68 Cal.App.3d 705, 720-722 [137 Cal.Rptr. 558] (harmless error in failing to state reasons or details for findings in the language of Welf. & Inst. Code, §§ 726 and 734).)

The probation officer's report indicated that appellant's mother could not effectively discipline him. The record in the trial indicated that Mr. Castagna had similarly been unsuccessful despite repeated talks with appellant, and supported the probation officer's conclusion that Mr. Castagna was overly protective. Although this was appellant's first appearance in juvenile court, the incident was only one of many which had severely disturbed appellant's neighbors. The probation officer concluded that *"it would not be possible to rehabilitate [appellant] at home"* and that appellant needed a more structured and secure setting. (Italics added.) The record clearly supports a finding that continued parental custody would be detrimental because appellant's behavior and problems could not be corrected by continued parental custody. Furthermore, this evidence tended to show the conditions set forth in subdivision (1) of rule 1372(b), that the parent or guardian was incapable or had failed or neglected to provide proper training. The court's comments at the disposition hearing indicate agreement with the probation officer's approach. We conclude that if the trial court had been aware of the requirement of an express finding of detriment, it is not reasonably probable that the finding would have been favorable to appellant. No miscarriage of justice occurred. (*In re Cindy E., supra,* 83 Cal.App.3d at pp. 408-409; *In re Robert W., supra,* 68 Cal.App.3d at pp. 721-722; Cal. Const., art. VI, § 13.)

The orders appealed from are affirmed.

Hastings, J., concurred.

Kaus, P. J., concurred in the result.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1979. Newman, J., was of the opinion that the petition should be granted.