Filed 7/9/13  In re Javier P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JAVIER P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAVIER P.,<br><br>        Defendant and Appellant. | A136819<br><br>(Sonoma County<br>Super. Ct. No. 36299-J) |

Javier P. appeals from a juvenile court order committing him to juvenile hall for a period of 112 to 142 days.  He contends the court abused its discretion in removing him from his grandparents' custody and placing him in juvenile hall without services necessary to treat his mental illness; failed to give proper consideration to less restrictive or more rehabilitative dispositional alternatives; and failed to award predisposition credit for time served.  We shall order the disposition order modified to award 29 days of predisposition credit and otherwise affirm the order.

## STATEMENT OF THE CASE AND FACTS

Appellant, 18 years of age at the time of the proceedings presently under review, had lived with his paternal grandmother from the time he was about three months old, due to his father's incarceration and his mother's substance abuse issues.

1

On January 25, 2010, when appellant was 16 years old, a wardship petition (Welf. & Inst. Code, § 602, subd. (a))[1] was filed alleging that he was unlawfully in public under the influence of alcohol in violation of Penal Code section 647, subdivision (f). The court imposed conditions of informal probation under section 654.2, which appellant successfully completed in August 2010, and the wardship petition was dismissed.[2]

On March 1, 2012, a new wardship petition was filed alleging that appellant, age 18, committed a battery on a school employee in violation of Penal Code section 243.6. Appellant admitted the allegation and was placed on formal probation.

On June 15, 2012, a notice of violation (§ 777) was filed alleging that appellant tested positive for marijuana on several occasions, stayed away from home all night without permission, failed to contact his probation officer as directed and failed to follow the probation officer's directives. On July 3, appellant admitted the marijuana allegations and the others were dismissed. Appellant was continued on formal probation.

Another notice of violation was filed on August 14, alleging that appellant stayed out past midnight on several occasions, failed to contact his probation officer, was reported by his grandmother to be in possession of alcohol, failed to submit to chemical testing on specified dates and tested positive for marijuana on several dates. Appellant admitted the allegations on August 16. The prosecutor and probation officer requested that appellant be remanded immediately to juvenile hall. Defense counsel urged that appellant's violations were due to his substance abuse problems, and that he was self-medicating for what was likely a diagnosable mental health problem. Counsel noted that he had encouraged appellant's grandmother to have appellant undergo a psychological

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2] Section 654.2 permits the court to order a six-month program of supervision without adjudging a minor a ward of the court, with the wardship petition to be dismissed if the program is successfully completed.

2

examination at Kaiser, where the family had insurance, and that the probation department had made some effort to get appellant help for his substance abuse, but that appellant had not taken advantage of these efforts.  Acknowledging that appellant needed a consequence for his conduct, counsel argued that detention in juvenile hall was not going to improve his situation and appellant was "sinking between the cracks," and suggested the court order 60 to 90 days on community detention and terminate probation.  The prosecutor asked that appellant be remanded to juvenile hall and the matter put over until after the weekend, when the judge already familiar with the case would return and be able to consider it, but noted that appellant "is 18 now and there's not much left that is available to him."

The court set the matter for a disposition hearing and stated that appellant would be remanded to juvenile hall meanwhile, but because appellant had not been given notice that he faced immediate remand, the matter was continued to August 20.  On August 20, the court released appellant to his grandmother.  The court's minute order reflects that appellant was declared a ward of the court and that the court made the requisite findings to remove physical custody from the legal guardian and place appellant under the care, custody and control of the probation department.

A third notice of violation was filed on September 4, alleging that appellant had again tested positive for marijuana and had failed to contact his probation officer as ordered.  Appellant was detained in juvenile hall.  On September 6, he admitted the marijuana allegation and the other allegation was dismissed.  The probation department recommended that appellant be detained in juvenile hall for 120 to 150 days.  The court stated that it believed the minimum detention should be 150 days "[b]ecause at 19 probation would transport [appellant] over to the big house.  And he can get a look at it for a little bit and see if that's how he wants to live his life, in the county jail, or whether he wants to finally give up smoking marijuana."  Defense counsel asked that the probation department have appellant undergo a psychiatric evaluation before making a final recommendation on disposition.  Counsel asked the court about appellant being able

3

to contact "TASC" (Treatment Accountability for Safer Communities) and the court suggested counsel call the person who handled screening for this program.

The probation report prepared for the disposition hearing stated that appellant reported having no behavioral issues in school prior to high school, when he started "acting out and getting into trouble." He had an Individualized Educational Plan and for the last three school years had been on an independent study program, with a teacher coming to his house once a week to pick up a completed work packet and give him a new one. He had not graduated as planned and at the time of his arrest was "in the process of re-enrolling at Windsor High School." Appellant reported having smoked marijuana daily for the past two years. He had attempted to stop on a couple of occasions to please his grandmother but did not succeed because " 'it's so available.' " He wanted to stop in order to please his grandmother and make it easier to find a job. Appellant's grandmother told the probation officer she was concerned about appellant's use of and inability to abstain from using drugs and alcohol, and believed he needed a residential treatment program to address the issue.

The probation report further related that appellant had been in counseling "on and off" since he was about eight years old, most recently at the directive of his high school. He was prescribed Zoloft for stress relief but stopped taking it after one year. Appellant's grandmother believed he was depressed, but when asked if she had made any medical or psychiatric appointments for him at Kaiser, she said "she 'had not thought about it' and 'thought you would just do it since he is here.' " The probation officer encouraged her to make an appointment for appellant, noting that appellant's previous probation officer had also encouraged the family to contact Kaiser to facilitate mental health and substance abuse counseling. Appellant denied being depressed but acknowledged that other people thought he was; he described feeling " 'stressed out.' " He stated that counseling had never helped him because he did not want to go and " 'just sat there,' " but admitted he had no one to talk to about his problems, believed it might be beneficial to have someone, and said he was willing to participate in counseling if court-ordered.

4

The probation report stated that appellant was not eligible for probation camp and placement services due to his age. The department continued to recommend that appellant be committed to juvenile hall for 120 to 150 days. According to the report, appellant had been "unwilling or unable to follow basic probation and court directives," had continued to smoke marijuana despite being "explicitly told of the consequences," and had not taken advantage of "support and intervention via several community resources" that the department had offered him. Regarding the suggestion that appellant suffered from mental health issues, the probation report noted that appellant had been to counseling and continued to have access to it, but admitted he had not been interested or willing to participate. While "pleased to see the minor is motivated to change," the probation officer stated, "it continues to be our belief that we have exhausted our efforts in assisting him in doing so. At nearly nineteen years old, if [appellant] truly wants to make positive changes to his life, then he will reap the benefits of doing so . . . in the adult system, should that be the case."

On September 25, appellant submitted the report of Dr. Megan Burns, who had evaluated him for mental illness at the request of the defense. Appellant told Dr. Burns that he had started smoking marijuana in middle school and acknowledged drinking alcohol. According to Burns's report, appellant was "hyperactive and moved constantly," "rocked," made "rapid chopping motions to his legs" with his hands held "rigid and straight," bit his nails, and was "disheveled." His eye contact was poor, his speech was "vague and laconic," he mumbled to himself twice and he was "internally preoccupied" at one point. His affect was flat but he became alarmed when Dr. Burns asked him if he had ever heard voices, at which point he looked directly at her and asked, " 'Do you think I have schizophrenia?' " Appellant's grandmother told Dr. Burns that there were " 'brain disorders in her family' ": Appellant's uncle had schizophrenia and appellant's father had told her that appellant's mother had been in a mental hospital. The grandmother reported that the family did not believe appellant was "like this" due to marijuana but appellant disagreed and refused to go to the doctor. Appellant had been a responsible,

5

shy and self-motivated child who enjoyed school and was a good student. Since age 16, however, he had become "irritable, mad and defensive," frequently talked and yelled although no one was with him, and once "was talking to himself and then hit a hole in the wall." He had become slovenly, accused his grandmother of watching him and was no longer social. Appellant's grandmother said that she would greatly appreciate appellant receiving mental health services, would agree to medication to help him and had not been able to convince him to obtain help. Dr. Burns stated that appellant had been using "significant" amounts of marijuana, which could alone cause psychotic states, but she doubted this was the cause of his psychotic thinking. Appellant had shown all of the symptoms she listed for schizophrenia and Burns believed he "probably has developed schizophrenia like his uncle."

At the disposition hearing on September 28, the court began by stating that Dr. Burns's report offered "a lot of enlightenment. However, I don't know what else might be available to the Court." The probation officer agreed that the report was "concerning" but, "as the Court indicated, I'm not sure what's left for him now as far as resources go in the juvenile delinquency system."

Appellant's attorney disagreed that options had been exhausted, stating that appellant was "quite frightened and upset" about the schizophrenia diagnosis, that he was an "under-served child" who had come late to the system, and that because he was still 18, placement would be possible at camp and "PACT" and "WRAP" programs would be available. Counsel asked the court to consider a "WRAP" program or help appellant connect with Sonoma County mental health services, urging that committing appellant for 120 to 150 days would do nothing to help him and would effectively penalize him for being an "untreated schizophrenic."

The court responded that appellant was being penalized not for his schizophrenia but for the battery he committed and his inability to comply with the basic requirements of probation. The court told appellant that schizophrenia was a treatable disease that would cause nothing but problems for him and his family if not treated and urged him to

6

get treatment, expressing concern that appellant and his family appeared to "want to run from that diagnosis because you're afraid that it brands you with something." The court then stated, "So I think the referral to Sonoma County mental health is appropriate. I would hope that probation will follow through with that while he's in the hall. I would like probation to take a look at if there are programs that he can be referred to. [¶] And if you become aware of those, [defense counsel], bring his matter back to me. [¶] But at this point I think that there's nothing more that this court can offer him in terms of programs through the juvenile court." After ordering that appellant be retained a ward of the court and serve 112 to 142 days in addition to time already served, the exact time to be determined by the juvenile hall director, the court stated, "It is my hope that probation will find something that perhaps we can refer him to and will bring the matter back before me before that 112 days." Defense counsel asked the court to consider allowing appellant to remain in juvenile hall when he turned 19 on January 12, rather than being transferred to county jail; the court stated that appellant would be released before he turned 19 if he served the 112 days, giving appellant the incentive to do well or have to move to the adult facility. The court ordered Dr. Evans to check in with appellant. The court's minute order states, "Dr. Evans to check w/ minor ASAP" and "referral to So. Co. Mental Health ASAP per the cts orders."

Appellant filed a timely notice of appeal on October 9, 2012.

## I.

Appellant contends the juvenile court failed to make the findings required by section 726 for removing him from his grandmother's custody—that his grandmother had failed to provide proper care, probation in his grandmother's custody had failed, or allowing him to remain with his grandmother would be detrimental.

Section 726, subdivision (a), provides: "In all cases in which a minor is adjudged a ward or dependent child of the court, the court may limit the control to be exercised over the ward or dependent child by any parent or guardian and shall in its order, clearly and specifically set forth all those limitations, but no ward or dependent child shall be

7

taken from the physical custody of a parent or guardian, unless upon the hearing the court finds one of the following facts: [¶] (1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor. [¶] (2) That the minor has been tried on probation while in custody and has failed to reform. [¶] (3) That the welfare of the minor requires that custody be taken from the minor's parent or guardian."

Curiously, respondent argues that the trial court was not required to make express findings under section 726, subdivision (a), because appellant was never declared a ward of the court. According to respondent, the reporter's transcript establishes that appellant was never adjudged a ward and simply was placed on probation with the condition that he spend a specified period of time in juvenile hall.

This argument is curious both because the court could not have ordered such a disposition and because the record affirmatively demonstrates that appellant *was* adjudged a ward of the court on August 20, 2012. The court could not have made the order respondent claims it did because if a minor is not adjudged a ward of the court, the court may *not* order the minor confined in juvenile hall. (*In re Trevor W.* (2001) 88 Cal.App.4th 833, 838-839; §§ 725, 726, 730.) To impose time in juvenile hall as a condition of probation, the court must first adjudge the minor a ward. (*In re Trevor, supra,* at pp. 838-839.)[3]

As for the record, respondent's contention that appellant was never adjudged a ward of the court is based on the following: At the August 16 hearing, appellant's attorney stated that appellant was not a ward of the court, and both appellant's attorney

---

[3] It is strange that respondent makes this argument after citing *In re Trevor W., supra,* 88 Cal.App.4th at page 837, for the proposition that a juvenile hall commitment is a valid condition of probation "for minors like appellant," since *Trevor W.* reversed an order imposing time in juvenile hall as a condition of probation precisely because the minor had not been declared a ward of the court.

and the prosecutor advised the court it could not declare appellant a ward at that time,[4] and the transcript of the disposition hearing on September 28 does not reflect the court declaring appellant a ward. Respondent acknowledges several minute orders in the record indicating that appellant was "retained" a ward of the court, but argues that these are not controlling because the clerk's minute order cannot supplement the judgment actually pronounced by the court. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 387-388.)

Respondent ignores the minute order for the hearing on August 20, which clearly states that appellant was declared a ward of the court. The record does not include a reporter's transcript for the August 20 hearing. We have no reason to doubt that appellant was adjudged a ward of the court at the August 20 hearing, as the minute order so states. Both the reporter's transcript and clerk's minute order for the September 28 disposition hearing reflect that the court "retained" appellant as a ward at that time.

Appellant's argument that the trial court failed to make proper findings under section 726 is based largely upon former rule 1372 of the California Rules of Court—a rule long since superseded in both number and content. The portion of this rule of apparent significance to appellant—requiring the court to make a finding of "detriment" in addition to findings tracking the language of section 726—is not a part of the currently effective rule 5.790(d). *In re Cindy E.* (1978) 83 Cal.App.3d 393, upon which appellant relies, was concerned with the juvenile court's failure to make the express finding of detriment required by then-controlling rule 1372.

Given the change in language of the rule of court, the lasting significance of *In re Cindy E.* is simply a general holding that the court errs if it fails to make the findings required by a rule of court. *Cindy E.* also held, however, that such an error can be

_____

[4] As indicated above, on August 16 the court continued the matter to August 20 because appellant had not been given notice he faced immediate remand. When the court stated its intention to declare appellant a ward, appellant's attorney stated that the court could not make a "partial disposition" order without appellant's consent, and the prosecutor agreed.

9

harmless if the record demonstrates there is no reasonable probability of a more favorable outcome. (*In re Cindy, supra*, 83 Cal.App.3d at pp. 408-409; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.)

In the present case, the court did not expressly make the findings required by section 726 and California Rules of Court, rule 5.790(d) at the disposition hearing on September 28. It did continue in effect its prior orders. The August 20 minute order includes findings that appellant's welfare required removing him from his guardian's physical custody, continuance in his guardian's home would be contrary to his welfare due to "behavioral issues" and "substance abuse issues," return would create a substantial risk of detriment, and reasonable efforts to eliminate the need for removal had been made through probation intervention. Although not stated in the language of section 726, these findings address the substance of those section 726 requires in order for the court to remove a minor from the guardian's physical custody—either that the guardian "is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor," that the minor has failed to reform while on probation in the guardian's custody, or that the minor's welfare requires taking custody from the guardian. The evidence before the court would have supported any of these findings, as appellant repeatedly violated probation while living with his grandmother, his grandmother had been unable to prevent him from continuing to use marijuana, and his grandmother had failed to arrange counseling for him at Kaiser, despite the probation department's request that she do so. The trial court made clear its belief that appellant needed to spend a period of time in custody to impress upon him the need to stop his marijuana use. There is no reasonable probability that the court would not have removed appellant from his grandmother's custody if it had explicitly addressed the findings required by section 726.

Appellant further argues that the court made no findings indicating it considered removal of appellant from his grandmother's custody a matter of last resort, as he believes was required by the societal interest in keeping families together. He offers

10

several cases recognizing the "overriding societal interest in preserving the family" (*In re Jeannie Q.* (1973) 32 Cal.App.3d 288, 297) and juvenile court philosophy of disturbing the normal family relationship only as, and to the extent, necessary to insure protection of the public and welfare of the minor (*County of Alameda v. Espinoza* (1966) 243 Cal.App.2d 534, 548, disapproved on other grounds in *In re Jerald C.* (1984) 36 Cal.3d 1, 11), and viewing removal from parental custody as "a matter of last resort" to be ordered only after other means have failed (*In re Donna G.* (1970) 6 Cal.App.3d 890, 894.)  The disposition order here is not inconsistent with this emphasis.  Appellant had been on probation in his grandmother's home, he continued to violate probation, and his grandmother had not attempted to arrange counseling for him.  He was already 18 years old, soon to turn 19.  As the court stated, this was the last chance for appellant to address his substance abuse and other problems within the juvenile court system.

The real issue appellant is raising is not the findings but the court's decision to remove him from his grandmother's custody and confine him in juvenile hall in light of the mental health issues discussed in Dr. Burns's report.  He argues the court did not consider less restrictive alternatives; he could have been placed in a probation camp or released and referred to Sonoma County Mental Health; and placement at juvenile hall denied him medical and rehabilitative care.  "[J]uvenile placements need not follow any particular order under section 602 and section 777, including from the least to the most restrictive."  (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.)  Moreover, in this case, the probation report stated that appellant was not eligible for probation camp and placement services due to his age.   The court was aware of and concerned about the matters raised by Dr . Burns's report:  It directed the probation department to refer appellant to Sonoma County Mental Health and look into whether other programs might be available, and expressed the hope that some program would be found for the court to consider before appellant completed the minimum term at juvenile hall.  But the reality was that appellant was 18 years old and his grandmother had been unable to obtain help for him despite her awareness, as reflected in the probation report and in Dr. Burns's

11

report, of his mental health issues and of mental health issues in the family. The evidence supported the court's determination that removal from the home was necessary. There was no abuse of discretion.

## III.

Appellant additionally contends the trial court improperly failed to award him 29 days of predisposition credit. Respondent agrees. A "minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing." (*In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067.) Appellant was initially confined in juvenile hall on August 31, 2012. As of the disposition hearing on September 28, he had served 29 days. The disposition order shall be modified to reflect an award of 29 days of predisposition credit.

## DISPOSITION

As so modified, the disposition order is affirmed.


_____
Kline, P.J.


We concur:


_____
Haerle, J.


_____
Lambden, J.

12