[Civ. No. 24431. Third Dist. Dec. 20, 1985.]

In re MARY T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MARY T., Defendant and Appellant.

**COUNSEL**

Reda G. Getty, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Willard F. Jones, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**\*—Mary T. appeals from an order directing the initiation of civil commitment proceedings under the provisions of Penal Code section 4011.6 after the juvenile court found her incompetent and suspended proceedings under section 602.[1] We shall affirm.

### FACTS

On July 23, 1984, Mary T., age 11, obtained a hammer and hit Angela L., on the head, killing her. Following the event Mary was placed in a juvenile detention facility.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]All citations are to Welfare and Institutions Code unless otherwise indicated.

The order is appealable. (See *People* v. *Fields* (1965) 62 Cal.2d 538 [42 Cal.Rptr. 833, 399 P.2d 369, 16 A.L.R.3d 708].)

A petition was filed with the juvenile court on July 25, 1984, alleging Mary came within the provisions of section 602 as a result of a violation of Penal Code section 187 (murder).

On July 26, 1984, the court ordered Mary detained for the protection of the minor and others.

On August 1, 1984, Mary's counsel expressed a doubt as to her competence to face the juvenile court proceedings. On Mary's motion, the court ordered the appointment of two psychiatrists, Dr. Stewart Teal and Dr. Ed Malewski, to evaluate the minor's competency.

A hearing on the matter of the minor's competency was held on August 14, 1984. At the outset of the hearing Mary's counsel moved the court for a "preliminary hearing" before the present sanity proceedings to determine whether the crime in fact was committed. The court granted the motion but refused to require the district attorney to present a prima facie case so that the presumption of incapacity to commit a criminal act of Penal Code section 26 could be overcome.[2] Based on counsel's stipulation that Mary did in fact render the blow which killed Angela the court concluded this "would be probable cause if this were a preliminary hearing." By further stipulation, the question of Mary's competence was submitted on the doctors' reports. The court found Mary incompetent to assist her counsel, ordered the county's Director of Mental Health to proceed under Penal Code section 4011.6,[3] and suspended the proceedings.

DISCUSSION

The minor contends that it was error to suspend the section 602 proceedings and order the initiation of civil commitment proceedings under Penal

[2]Penal Code section 26 provides, in pertinent part: "All persons are capable of committing crimes except those belonging to the following classes: [¶] One—children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." (Pen. Code, § 26, subd. One.)

[3]Penal Code section 4011.6 provides, in pertinent part: "In any case in which it appears to the person in charge of a county jail, city jail, or juvenile detention facility, or to any judge of a court in the county in which the jail or juvenile detention facility is located that a person in custody in such jail or juvenile detention facility may be mentally disordered, he may cause such prisoner to be taken to a facility for 72-hour treatment and evaluation pursuant to Section 5150 of the Welfare and Institutions Code . . . . The local mental health director or his designee may examine the prisoner prior to transfer to a facility for treatment and evaluation. Thereupon, the provisions of Article 1 (commencing with Section 5150), Article 4 (commencing with Section 5250), Article 4.5 (commencing with Section 5260), Article 5 (commencing with Section 5275), Article 6 (commencing with Section 5300), and Article 7 (commencing with Section 5325) of Chapter 2 and Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code shall apply to the prisoner."

Code section 4011.6 without first requiring a prima facie showing that the minor fell within the jurisdiction of the court under section 602, including a prima facie showing that the rebuttable presumption of Penal Code section 26 could be overcome. The issue appears to be one of first impression.

We begin with a brief review of applicable juvenile court procedures. Proceedings to declare a minor a ward of the court are initiated by the filing of a petition setting forth the alleged basis for the exercise of the court's jurisdiction under section 602. (Section 650.) Where the minor is detained, a detention hearing must be held within a specified period of time following the actual taking of the minor into custody. (Section 631; Cal. Rules of Court, rule 1321.) The minor may not be ordered detained unless, "A prima facie showing has been made that the minor is a person described by section 601 or 602" and one of the additional specified grounds for detention is established. (Cal. Rules of Court, rules 1326, 1327; sections 635-636; *In re William M.* (1970) 3 Cal.3d 16 [89 Cal.Rptr. 33, 473 P.2d 737].)[4]

If, during the pendency of juvenile proceedings under section 602, a doubt arises as to the ability of the minor to understand the nature of the proceedings or to assist counsel in the conduct of those proceedings in a rational manner due to some form of mental disorder, the court is obligated to suspend the proceedings and hold a hearing to determine the present sanity of the minor. If the court thereafter finds that the minor is incapable of understanding or assisting, proceedings must then be instituted pursuant to section 705. Section 705 empowers the juvenile court to utilize the authority of Penal Code section 4011.6 to initiate the possible civil commitment of the minor. (*James H.* v. *Superior Court* (1978) 77 Cal.App.3d 169 [143 Cal.Rptr. 398].)

In adult cases, Penal Code section 1368.1 permits a criminal defendant to make certain challenges to the legal sufficiency of the criminal charges before the initiation of competency proceedings which may lead to a civil commitment. In contrast, neither the Juvenile Court Law (Welf. and Inst. Code § 200 et seq.) nor the supplementary provisions of the California Rules of Court contain provisions parallel to those found in Penal Code section 1368.1. The minor contends, in essence, that similar procedures are required for juveniles and that such procedures must include the requirement of proof rebutting the presumption of incapacity to commit a criminal act contained within Penal Code section 26. We disagree. We begin our analysis by examining the genesis of the apparent adult criminal court analogue.

---

[4]The grounds for detention include: 1) a violation of a court order; 2) escape from a court commitment; 3) likelihood of flight from court jurisdiction; 4) protection of the minor; and 5) protection of the person or property of others. (Cal. Rules of Court, rule 1327; sections 635-636.)

Before the Supreme Court decision *In re Davis* (1973) 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018], persons found incompetent in criminal proceedings could be confined in a state mental institution for an indefinite period of time. Following the rule adopted by the United States Supreme Court in *Jackson* v. *Indiana* (1972) 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845], our Supreme Court held that, "no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future." (*In re Davis, supra,* 8 Cal.3d 798, 801.)

In response to the limitations articulated in *Jackson* and *Davis,* the Legislature adopted a number of revisions to California's sanity procedures (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161 [167 Cal.Rptr. 854, 616 P.2d 836]; *Chambers* v. *Municipal Court* (1974) 43 Cal.App.3d 809, 812 [118 Cal.Rptr. 120].) Criminal incompetents may not now be confined beyond the restoration of their sanity or a three-year limit or the maximum confinement time for the charged offense, whichever is shorter. (Pen. Code, § 1370, subds. (a)(1) and (c)(1).) Where competency is not restored or restorable within these and other defined limits, consideration must be given to release or to initiating civil commitment proceedings under section 5000 et seq., the Lanterman-Petris-Short Act. (See Pen. Code, § 1370, subds. (a)(2) and (e).)[5] In addition, time spent in specified facilities due to a finding of incompetence is credited against any subsequently ordered criminal court confinement time. (Pen. Code, § 1375.5.)

Another revision was the adoption of Penal Code section 1368.1. As originally enacted, that section required the conduct of a preliminary examination prior to the initiation of competency proceedings in felony matters. In misdemeanor cases, the defendant was permitted to make certain challenges to the complaint, including moving to dismiss the complaint on the ground of an absence of reasonable cause to believe that a public offense was committed. (Pen. Code section 1368.1, Stats. 1974, ch. 1511, § 4.) In 1982, Penal Code section 1368.1 was amended to require that competency proceedings in felony cases be initiated before the filing of an information in the absence of a request for a preliminary examination by defendant or his counsel. (Stats. 1982, ch. 444, § 1.)

---

[5]Other provisions provide for outpatient treatment and for extended commitment in limited circumstances and distinctions are made between persons incompetent due to "mental disorder" as opposed to "development disability." (See, e.g., Pen. Code, §§ 1367, 1370, 1370.1, and 1600 et seq.)

Curiously, the presence of a requirement for substantive hearings prior to a determination of the competence issue has been challenged, without success, but the absence of such requirement has never been declared an element of due process despite a suggestion to that effect in *Jackson.*[6] In *Hale* v. *Superior Court* (1975) 15 Cal.3d 221 [124 Cal.Rptr. 57, 539 P.2d 817] the procedure was challenged by a criminal defendant on the ground that requiring the conduct of a substantive hearing in a criminal case before a competency hearing deprived the incompetent accused of effective assistance of counsel. This challenge was rebuffed. Hale did not decide, however, that the presence of such procedures was a required element of due process. The court noted that the precompetency determination hearings were only an expression of "the Legislature's judgment that a defendant should not be subject to such long-term confinement unless probable cause . . . is determined by means of a preliminary hearing or grand jury hearing." (*Id.,* at p. 229; and see *Chambers* v. *Municipal Court, supra,* 43 Cal.3d 809.) The significant differences between adult and juvenile present competence procedures lead us to conclude that precommitment probable cause proceedings that may be mandatory in adult criminal cases are not necessary in juvenile cases.

In an adult proceeding, a finding of present incompetence results in an immediate suspension of the criminal proceedings. The next issue is simply whether the defendant should be confined in a state hospital or other facility or released on an outpatient status. (Pen. Code, § 1370, subds. (a)(1) and (a)(2).)

A finding of incompetence in a juvenile proceeding under the authority of *James H.* v. *Superior Court, supra,* 77 Cal.App.3d 169, however, does not next result in a confinement order or the equivalent. The finding of present incompetence of a juvenile at most results in a referral for evaluation for possible initiation of civil commitment proceedings under applicable provisions of the Lanterman-Petris-Short Act. (Pen. Code, § 4011.6, see text, fn. 3, *ante.*)[7] In adult cases, therefore, the pendency of the underlying crim-

---

[6]Jackson argued that "fundamental fairness" required the dismissal of the underlying criminal charges as it was less than unlikely that he would ever be competent to face them. The Supreme Court acknowledged that "On this record, Jackson's claim is a substantial one" (406 U.S. at p. 739 [32 L.Ed.2d at p. 451]) and that "[b]oth courts and commentators have noted the desirability of permitting some proceedings to go forward despite the defendant's incompetency." (406 U.S. at p. 740] [32 L.Ed.2d at p. 452], fn. omitted.) The court declined to rule on the issue, however, as it was not properly before it for decision.

[7]Indeed, mentally ill minors cannot be committed without compliance with applicable provisions of the Lanterman-Petris-Short Act (§ 5000 et seq.) or other appropriate procedures affording adequate due process even where they are already wards of the court (*In re Michael E.* (1975) 15 Cal.3d 183 [123 Cal.Rptr. 103, 538 P.2d 231]) and even where a parent or guardian seeks commitment (*In re Roger S.* (1977) 19 Cal.3d 921 [141 Cal.Rptr. 298, 569 P.2d 1286]).

inal case is a necessary predicate to the commitment and its continuance. The opportunity to raise at least preliminary challenges to the underlying criminal charges, therefore, may protect an innocent person from being subjected to commitment as a criminal incompetent or from continuing in detention beyond the viability of the underlying charges. (See fn. 6, *ante; Jackson* v. *Indiana, supra,* 406 U.S. at pp. 739, 741 [32 L.Ed.2d at pp. 451, 452].) In juvenile cases, any resultant commitment is independently based on the civil commitment standards and will cease or endure based on those standards, no matter what disposition is made in the section 602 proceedings.

This fundamental difference in the two procedures is significant in two ways. First, juveniles have all of the due process protections afforded to any person referred for possible involuntary civil commitment. In effect, a juvenile is not committed as incompetent to proceed with section 602 proceedings, but on a wholly independent basis and after wholly independent procedures. The adequacy of these procedures is not here challenged and we have no reason to question their sufficiency. (See, e.g., *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1]; *In re Roger S.* (1977) 19 Cal.3d 921, 935 [141 Cal.Rptr. 298, 569 P.2d 1286].)

Secondly, the differences between the adult procedures and the juvenile procedures mean that juveniles and adults are not similarly situated such that equal protection might require that procedures equivalent to adult cases be employed in juvenile court. (See *In re Michell P.* (1978) 22 Cal.3d 946 [151 Cal.Rptr. 330, 587 P.2d 1144] and *In re S.A.* (1970) 6 Cal.App.3d 241 [85 Cal.Rptr. 775]; compare *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375].)

■ We therefore conclude that the juvenile court may initiate proceedings to determine present competence and, where necessary, suspend proceedings and make a referral under Penal Code section 4011.6 without a threshold showing of probable cause to believe the offense alleged in the petition has been committed or that the presumption of Penal Code section 26 can be overcome.

The absence of the prima facie showing urged by appellant here does not mean that a mentally incompetent juvenile may be detained without any preliminary showing of potential jurisdiction. To the contrary, a juvenile may not be detained without a prima facie showing of potential jurisdiction under section 602. (§§ 635-636, Cal. Rules of Court, rule 1326; *In re William M., supra,* 3 Cal.3d 16.) Ultimately, jurisdiction under section 602 cannot be established in the absence of clear proof that a child under the age of 14 years possesses knowledge of the wrongfulness of the act charged

under section 602. (*In re Gladys R.* (1970) 1 Cal.3d 855 [83 Cal.Rptr. 671, 464 P.2d 127]; *In re Cindy E.* (1978) 83 Cal.App.3d 393 [147 Cal.Rptr. 812].)[8] As Mary makes no challenge to the adequacy of the court's detention order in the instant case, we presume that she has been accorded the safeguards required by the juvenile court law and rules of court concerning her detention.

We conclude that the procedures followed by the juvenile court here were adequate. The order appealed from is affirmed.

Puglia, P. J., and Evans, J., concurred.

---

[8]The language of California Rules of Court, rule 1326, requiring a "prima facie" showing of jurisdiction as opposed to a prima facie showing of the commission of the offense, would suggest that a prima facie showing that the Penal Code section 26 presumption can be overcome must preceed a detention order. As the detention order is not challenged in this case, we need not decide that question.