[No. A074385. First Dist., Div. Four. May 12, 1997.]

In re PATRICK H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
PATRICK H., Defendant and Appellant.

**COUNSEL**

Paul Bernstein for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REARDON, J.**—At issue in this case are the placement alternatives available to a juvenile court once it has found that a mentally disordered minor accused of criminal-type misconduct is unable to assist in his or her defense. (See *James H. v. Superior Court* (1978) 77 Cal.App.3d 169 [143 Cal.Rptr. 398] (*James H.*).)

In April 1995, the Napa County District Attorney filed a juvenile court petition pursuant to Welfare and Institutions Code[1] section 602 against the 16-year-old appellant, Patrick H. The petition contained one allegation of burglary of a vehicle (Pen. Code, § 459); two allegations of assault upon a peace officer with a semiautomatic firearm (Pen. Code, § 245, subd. (d)(2)); one allegation of attempted murder of a peace officer (Pen. Code, §§ 664, subd. (e)(1), 187); and one allegation of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)). The district attorney alleged several "serious felony" and "use of firearm" enhancements. (Pen. Code, §§ 1192.7, subd. (c)(8), 12022.5, subds. (a) & (d).) Pursuant to section 707, subdivision (b), the district attorney requested that appellant be declared unfit to be dealt with under the juvenile court law.

At the time of the alleged offenses, Patrick was a patient at Napa State Hospital. At a hearing in June 1995, defense counsel expressed a doubt concerning his client's mental competence to stand trial. The juvenile court appointed an expert to examine the minor. In October 1995, the court found that he was incompetent to stand trial. Following an evaluation, the court, acting pursuant to Penal Code section 1370, ordered that appellant remain committed to Napa State Hospital.

After several hearings, the juvenile court in April 1996, acting pursuant to section 705, ordered that the minor be evaluated pursuant to Penal Code section 4011.6 to determine whether he had a mental disorder or was developmentally disabled, and if so, whether as a result of the disorder, he was a danger to others, or to himself, or was gravely disabled. Following an evaluation, the county mental health department found that appellant was gravely disabled as a result of a mental disorder and met the criteria for involuntary hospitalization pursuant to section 5150.

On May 20, 1996, the juvenile court ordered the Los Angeles County Department of Health and Human Services to file a petition for conservatorship pursuant to section 5150. Over defense objection, the court also ordered that the minor continue to be held pursuant to Penal Code section 1370.

---

[1]Unless otherwise stated, section references are to the Welfare and Institutions Code.

Patrick appeals from the order committing him pursuant to Penal Code section 1370.

## I. Statement of Facts

Patrick is a profoundly deaf minor who was voluntarily admitted to Napa State Hospital when he was 10 years old. He was later declared a dependent child of the Los Angeles County Juvenile Court. At the time of the alleged offenses, he was 16 years old.

According to reports in the clerk's transcript, Patrick escaped from Napa State Hospital on March 17, 1995, entered a locked sheriff's patrol car, and removed a semiautomatic rifle. When Sergeant Doug Koford came out of the sheriff's office, Patrick pointed the rifle at him. Koford pulled out his revolver and Patrick ran away. Koford pursued him and radioed for assistance. Napa Police Officer Tim Cantillion, accompanied by a civilian passenger, drove up in his vehicle. Patrick pointed the rifle at Cantillion and his passenger. Cantillion stopped his vehicle, pulled out his revolver, and shot Patrick twice. Patrick was arrested, treated for his injuries, and was then transported back to Napa State Hospital.

## II. Procedural Facts

During pretrial proceedings, defense counsel on June 16, 1995, expressed a doubt concerning Patrick's mental competence to stand trial and requested the court to appoint an expert to examine him. The juvenile court granted counsel's request "under [Penal Code section] 1368 or its juvenile equivalent."[2]

The court appointed Dr. Peggy Kelly, a neuropsychologist at the Center on Deafness, University of California, San Francisco. In an amended report, Dr. Kelly concluded that Patrick had the ability to understand the charges before him, but he was not able to comprehend the personal implications of criminal proceedings, nor was he able to cooperate with counsel in his own defense.

In October 1995, based on Dr. Kelly's report, the juvenile court found the minor incompetent to stand trial. The court referred him to the community program director of the Napa County Conditional Release Program for a

---

[2]Defense counsel responded that "the juvenile equivalent" to Penal Code section 1368 was set forth in *James H.*, *supra*, 77 Cal.App.3d 169. He also cited *In re Mary T.* (1985) 176 Cal.App.3d 38 [221 Cal.Rptr. 364]. These cases are discussed in part III, *post*.

placement evaluation.[3] The community program director recommended that Patrick "remain committed to Napa State Hospital in order to regain trial competency."

On November 21, 1995, the juvenile court stated it had read and reviewed the "report pursuant to Section 1370." Citing *James H., supra,* 77 Cal.App.3d 169, defense counsel objected, arguing that once the juvenile court found Patrick not competent to stand trial as defined in Penal Code section 1367, it should no longer follow the statutory scheme for adult criminal proceedings (Pen. Code, § 1368 et seq.). Instead, counsel argued that the juvenile court should apply existing juvenile procedures under section 705,[4] which section provides that if a minor is believed to be mentally disordered, the court should proceed as provided in section 6550[5] or Penal Code section 4011.6.[6] Alternatively, since the Los Angeles County Juvenile Court had ongoing dependency jurisdiction over Patrick, counsel

---

[3]Under adult criminal procedures, if a defendant is found mentally incompetent, the court must order the community program director or a designee to evaluate the defendant before it makes an order directing that the defendant be confined in a state hospital or other treatment facility or be placed on outpatient status. (Pen. Code, § 1370, subd. (a)(2).)

[4]Section 705 provides: "Whenever the court, before or during the hearing on the petition, is of the opinion that the minor is mentally disordered or if the court is in doubt concerning the mental health of any such person, the court may proceed as provided in Section 6550 of this code or Section 4011.6 of the Penal Code." Each of the latter two cited sections provides for civil commitment under the Lanterman-Petris-Short Act (LPS). (§ 5000 et seq.)

[5]Section 6550 provides: "If the juvenile court, after finding that the minor is a person described by Section 300, 601, or 602, is in doubt concerning the state of mental health or the mental condition of the person, the court may continue the hearing and proceed pursuant to this article."

Section 6551 provides, in pertinent part: "If the court is in doubt as to whether the person is mentally disordered or mentally retarded, the court shall order the person to be taken to a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation. Thereupon, Article 1 (commencing with Section 5150) of Chapter 2 of Part 1 of Division 5 applies, except that the professional person in charge of the facility shall make a written report to the court concerning the results of the evaluation of the person's mental condition. If the professional person in charge of the facility finds the person is, as a result of mental disorder, in need of intensive treatment, the person may be certified for not more than 14 days of involuntary intensive treatment if the conditions set forth in subdivision (c) of Section 5250 and subdivision (b) of Section 5260 are complied with. Thereupon, Article 4 (commencing with Section 5250) of Chapter 2 of Part 1 of Division 5 shall apply to the person. The person may be detained pursuant to Article 4.5 (commencing with Section 5260), or Article 4.7 (commencing with Section 5270.10), or Article 6 (commencing with Section 5300) of Part 1 of Division 5 if that article applies. [¶] . . . [¶] The jurisdiction of the juvenile court over the minor shall be suspended during such time as the minor is subject to the jurisdiction of the court in which the petition for postcertification treatment of an imminently dangerous person or the petition for commitment of a mentally retarded person is filed or under remand for 90 days for intensive treatment or commitment ordered by such court."

[6]Penal Code section 4011.6 provides, in pertinent part: "In any case in which it appears to the person in charge of a county jail, city jail, or juvenile detention facility, or to any judge of

suggested that the Napa County Juvenile Court should transfer the entire matter to Los Angeles for proceedings in that county. When the juvenile court indicated its intent to commit appellant to Napa State Hospital for a three-month evaluation, counsel expressed his opinion "that the statutory scheme would allow the Court to commit him to Napa State Hospital for a seventy-two hour evaluation for them to make a determination as to whether he's gravely disabled; whether he's a danger to himself or to others, or whether he is developmentally disabled. But I don't think that the statutory scheme would allow the Court to commit him to Napa State Hospital for a three month period of time. [¶] THE COURT: Okay. [¶] I disagree. Anything further?" The court then ordered Patrick to remain committed to Napa State Hospital "pursuant to Section 1370 of the Penal Code . . . for the purpose of being treated in order to regain his trial competency." The record does not show if the minor sought review of that order at that time.

In February 1996, Napa State Hospital reported Patrick was not yet competent to stand trial and recommended that he "be retained at this facility for further care and treatment." On March 7, 1996, defense counsel asked the court to reconsider its procedures and elaborated on the legal basis for his request. He concluded that ". . . since there is no statutory scheme that has been adopted by the legislature applicable to juvenile court proceedings, I think James H. is the law in this area." (Original underscore.) When the court asked what it should do, defense counsel suggested that ". . . it really makes sense to transfer this case to Los Angeles pursuant to their ongoing dependency jurisdiction and allow them to do the best they can to find an appropriate placement for Patrick." The court stated that defense counsel's request was "very thoughtful" and "should be taken very seriously . . . ." It continued the matter so the prosecutor could respond to counsel's procedural arguments.

---

a court in the county in which the jail or juvenile detention facility is located, that a person in custody in that jail or juvenile detention facility may be mentally disordered, he or she may cause the prisoner to be taken to a facility for 72-hour treatment and evaluation pursuant to Section 5150 of the Welfare and Institutions Code and he or she shall inform the facility in writing, which shall be confidential, of the reasons that the person is being taken to the facility. The local mental health director or his or her designee may examine the prisoner prior to transfer to a facility for treatment and evaluation. Upon transfer to a facility, Article 1 (commencing with Section 5150), Article 4 (commencing with Section 5250), Article 4.5 (commencing with Section 5260), Article 5 (commencing with Section 5275), Article 6 (commencing with Section 5300), and Article 7 (commencing with Section 5325) of Chapter 2 and Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code shall apply to the prisoner. [¶] . . . [¶] A defendant, either charged with or convicted of a criminal offense, or a minor alleged to be within the jurisdiction of the juvenile court, may be concurrently subject to the Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code). [¶] . . . [¶] For purposes of this section, the term 'juvenile detention facility' includes any state, county, or private home or institution in which wards or dependent children of the juvenile court or persons awaiting a hearing before the juvenile court are detained."

By the next hearing, the court had developed a concern over the status of the unadjudicated section 602 matter if commitment proceedings were pursued. Defense counsel suggested the section 602 case would remain in a suspended status based on the minor's incompetency. (See § 6551; fn. 5, *ante*.) The court was also concerned about the willingness of Los Angeles authorities to establish an LPS conservatorship and to treat the minor with a view toward regaining trial competency. The court again continued the matter to permit defense counsel to consult with Los Angeles authorities and to give the prosecutor more time to brief the procedural issues.

In April 1996, Napa State Hospital reported that the minor continued to manifest a mental illness interfering with his ability to assist in his defense. It reported that he was making progress toward attaining competency "and may attain this goal within three years." The state hospital recommended that he be retained at its facility "for further care and treatment."

Meanwhile, the prosecution submitted its points and authorities responding to the procedural issues raised by the defense. The prosecution agreed that section 705, providing that the juvenile court proceed against a mentally disordered minor under section 6550 or Penal Code section 4011.6, applied. But whereas the defense emphasized section 6550, the prosecution argued that a Penal Code section 4011.6 placement was required in this case.[7] The prosecution therefore requested "that the minor be placed, per Penal Code section 4011.6, for evaluation and treatment under Welfare and Institutions Code [section] 5150 and that the local mental health director be ordered to prepare an evaluation and report concerning the minor and his course of future treatment. This report should address, among other things, whether the minor is gravely disabled, a danger to self, or a danger to others."

At an April 11, 1996, hearing, each side suggested the court start by invoking section 705. The court defended the position it had been taking: "It seems to me the placement that Patrick has at this time is where he should be. . . . I don't think we need at this point in the case a Welfare [and] Institutions Code proceeding under [section] 5150 or any other situation regarding his status: I just don't see the need for conservatorship at this point." The court believed that it had the inherent power under Penal Code

---

[7]By its terms, section 6550 first requires the court to find that the minor is a person described by section 300, 601 or 602 before it proceeds further. (See *In re Vicki H.* (1979) 99 Cal.App.3d 484, 496, fn. 5 [160 Cal.Rptr. 294].) Penal Code section 4011.6 does not require that finding. (See *In re Mary T., supra,* 176 Cal.App.3d at p. 44.) The court, of course, made no section 602 finding in this case. The prosecution did not discuss whether the fact that the minor had previously been found to be a person described by section 300 in Los Angeles would suffice for purposes of section 6550. We need not decide that issue in this case.

sections 1368 and 1370 to act as it had. It explained: "I'm not committing him. *I'm simply making the same order I would in any other case concerning an adult where he has been found not competent to stand trial.* I'd simply refer him to placement or treatment until he regains his trial competency." (Italics added.)

Ultimately, however, the court decided that since counsel were in agreement, it would order the minor to be evaluated pursuant to Penal Code section 4011.6 and section 5150 as to whether he had a mental disorder or was developmentally disabled, and if so, whether as a result he was currently a danger to others, or to himself, or was gravely disabled. The court requested reports from both the Napa State Hospital and the Napa County Mental Health Department.

In its report, Napa State Hospital concluded appellant had a mental disorder and, as a result, there was reason to believe he was gravely disabled and a danger to others. It did not believe that Patrick was developmentally disabled. In its report, the county mental health department commenced its report by stating that since Patrick was currently committed to the state hospital "under PC 1370, this opinion should be considered hypothetical." But continuing with its evaluation, the department stated its belief that appellant was not a danger to himself or others due to his mental illness, but acknowledged that this lack of dangerousness was "dependent on the highly structured and well-supervised environment provided by [his] hospital setting."[8] The department concluded that appellant could not care for himself, was gravely disabled as a result of a mental disorder and that "he would meet the criteria for involuntary hospitalization pursuant to Section 5150 of the W&I Code if the PC 1370 hold were dropped." It recommended that the case be "referred to the Los Angeles County Department of Social Services or Mental Health for a conservatorship investigation or residential placement."

In subsequent hearings, defense counsel agreed that the court should pursue an appropriate LPS commitment, but he continued to object to any commitment purporting to be made pursuant to Penal Code section 1370.[9] Moreover, the community program director pointed out to the court that so

---

[8]The court disagreed with the department's conclusion that the minor was not a danger to himself or others. "I truly believe, based on the crime charged, that this individual is a danger to others. There's no question about that in my mind."

[9]Defense counsel argued: "I don't think 1370 is an alternative. That's only in the adult court. In the case law that I provided the Court, really I think the only alternative is to either order the filing of the 6500 petition for dangerous developmentally disabled person or to go the route the court has gone so far in requesting a 5150 evaluation. [¶] The 602 petition was filed, and that's just there. The Court has found him incompetent, and I don't think that

long as there was a Penal Code section 1370 hold on the minor, Los Angeles County authorities would be reluctant to pursue a section 5150 petition. The court expressed concern, however, that absent its commitment order, the minor could be released before any petition was filed in Los Angeles.

On May 20, 1996, the juvenile court ordered that the Los Angeles County Department of Health and Human Services, within 10 days, file a section 5150 conservatorship petition regarding the questions of the minor's ability to provide for his food, clothing and shelter and whether the minor was a danger to himself or others.[10] It also ordered that appellant continue to be held pursuant to Penal Code section 1370, as previously ordered. The minor appealed.

### III. DISCUSSION

■ Appellant contends the juvenile court erred "in committing [him] as an adult rather than as a juvenile." He argues that "when the dust settled" after several months of hearings and evaluations, "the court made *both* the 1370 commitment and the LPS referral" (original italics) pursuant to Penal Code section 4011.6 and section 5150. He does not object to the LPS referral, but does object to the juvenile court's commitment order under Penal Code section 1370.

In the juvenile court, the district attorney agreed with the defense that the court should act pursuant to section 705 but, instead of resorting to section 6550 as suggested by the minor, it successfully urged the court to proceed under the alternative provisions in Penal Code section 4011.6. The prosecutor did not make any recommendation concerning the juvenile court's commitment order under Penal Code section 1370.

At this level, the Attorney General argues that there is nothing in the statutes or case law standing for the proposition that once a juvenile is found incompetent, civil commitment proceedings under section 6550 or Penal Code section 4011.6 are the *exclusive* remedies available. He concludes that nothing "prohibits the juvenile court from interposing in a juvenile proceeding, the proceedings for committing an adult adjudged to be mentally

---

dismisses that, it just means that the Court now has to follow the scheme that's been laid out in the case authorities, and that is to have a conservatorship established, presumably by Los Angeles County. [¶] If at some point in the future he gains his competency LA can notify us of that and I imagine Napa County could go forward on the 602 petition. [¶] But I don't think 1370 and anything following it is an option for the Court, because it's not set out in the case law, which establishes the competency proceeding in juvenile cases."

[10]The record before us does not indicate how Los Angeles County authorities responded to this order.

incompetent. Thus, the juvenile court properly exercised its inherent powers and continued treatment of appellant under section 1370."

In *James H., supra*, 77 Cal.App.3d 169, the Court of Appeal held that absent any statutory procedure for doing so, a juvenile court has the inherent power to determine a minor's mental competence to understand the nature of the pending proceedings and to assist counsel in a rational manner at that hearing. (*Id.* at p. 172.) Absent a statute or statewide Judicial Council rule on the subject, the Court of Appeal exercised *its* inherent power to formulate a suitable procedure when a minor's mental competence is at issue. (*Id.* at pp. 175-176.)

In *James H.*, the Court of Appeal ruled that if the juvenile court entertains a doubt as to the minor's capacity or ability to cooperate with his attorney, "then it should immediately suspend proceedings and conduct a hearing into the question of the minor's present competence. *In making that determination, the court may borrow from Penal Code section 1367 and use as a yardstick the definition of incompetency set forth in that section,* i.e., that the minor, by reason of mental disorder or developmental disability, is unable to understand the nature of the proceedings taken against him and assist counsel in the conduct of those proceedings in a rational manner." (*James H., supra*, 77 Cal.App.3d at p. 176, italics added.) If, as a result of that hearing, the court finds that the minor can cooperate with counsel, the court should then reinstate the pending proceedings. (*Id.* at pp. 177, 178.)

"If, however, the court finds that the minor cannot cooperate with his counsel, resort should then be made to existing juvenile court proceedings under Welfare and Institutions Code section 705, wherein a minor who is mentally disordered may be committed to an approved facility for care and treatment under Welfare and Institutions Code section 6550." (*James H., supra*, 77 Cal.App.3d at p. 177.)

Under the facts in *James H.*, it was appropriate for the juvenile court to proceed under section 6550. As section 6550 makes clear, the evaluation procedures set forth in the sections which follow "are not triggered unless the juvenile court has initially found the minor to be a person described by section [300], 601, or 602." (*In re Vicki H., supra*, 99 Cal.App.3d at p. 496, fn. 5.)

In contrast, the juvenile court in *In re Mary T., supra*, 176 Cal.App.3d 38 proceeded under Penal Code section 4011.6. In that case, the issue was

whether it was error for the juvenile court to suspend the section 602 proceedings and order the initiation of civil commitment proceedings under Penal Code section 4011.6 without first requiring a prima facie showing that the minor fell within the jurisdiction of the juvenile court under section 602. (*In re Mary T.*, *supra*, at pp. 40-41.) In deciding that issue, the Court of Appeal observed: "In an adult proceeding, a finding of present incompetence results in an immediate suspension of the criminal proceedings. The next issue is simply whether the defendant should be confined in a state hospital or other facility or released on an outpatient status. (Pen. Code, § 1370, subds. (a)(1) and (a)(2).) [¶] A finding of incompetence in a juvenile proceeding under the authority of *James H.* v. *Superior Court*, *supra*, 77 Cal.App.3d 169, however, does not next result in a confinement order or the equivalent. The finding of present incompetence of a juvenile at most results in a referral for evaluation for possible initiation of civil commitment proceedings under applicable provisions of the Lanterman-Petris-Short Act. . . ." (*Id.* at p. 43, citing Pen. Code, § 4011.6; see also § 6550.)[11] The Court of Appeal commented further: "In juvenile cases, any resultant commitment is independently based on the civil commitment standards and will cease or endure based on those standards, no matter what disposition is made in the section 602 proceedings. [¶] . . . In effect, a juvenile is not committed as incompetent to proceed with section 602 proceedings, but on a wholly independent basis and after wholly independent procedures." (*Id.* at p. 44.)

Turning to the facts in this case, when counsel first expressed his doubt concerning the minor's competency to stand trial in June 1995, the juvenile court granted counsel's request to appoint an expert to examine the minor "under 1368 or its juvenile equivalent." Based on the expert's evaluation, the court in October 1995 found Patrick was unable to comprehend the personal implications of the criminal proceedings and was unable to cooperate with counsel in his own defense, and concluded that he was not competent to stand trial at that time. It referred Patrick to the community program director for placement evaluation. To this point, the juvenile court was in substantial compliance with the procedures suggested in *James H.*

At a November 1995 hearing, the court began by indicating it had read, reviewed and considered the recommendations in the community program

---

[11]At this point in its opinion, the Court of Appeal noted that even where they are already wards of the court, "mentally ill minors cannot be committed without compliance with applicable provisions of the Lanterman-Petris-Short Act (§ 5000 et seq.) or other appropriate procedures affording adequate due process . . . ." (*In re Mary T.*, *supra*, 176 Cal.App.3d at p. 43, fn. 7, citing *In re Michael E.* (1975) 15 Cal.3d 183 [123 Cal.Rptr. 103, 538 P.2d 231].)

director's evaluation report "pursuant to Section 1370." Defense counsel immediately objected. He described the *James H.* procedures at some length and urged the court to apply them in this case. When the court indicated its intent to commit Patrick to Napa State Hospital for a three-month evaluation, counsel argued that the juvenile scheme allowed for a seventy-two hour evaluation, but not a three-month evaluation. The juvenile court disagreed, and ordered Patrick to remain committed to Napa State Hospital for 90 days "pursuant to Section 1370 of the Penal Code . . . for the purpose of being treated in order to regain his trial competency."

As the juvenile court later explained, "I'm simply making the same order I would in any other case concerning an adult where he has been found not competent to stand trial." By so ordering, the juvenile court erred. Once the juvenile court "borrow[ed] from Penal Code section 1367 and use[d] as a yardstick the definition of incompetency set forth in that section" (*James H.*, *supra*, 77 Cal.App.3d at p. 176), it should no longer have continued with the adult statutory scheme. Instead, once the court found that the minor could not cooperate with his counsel, it should have turned to section 705 and proceeded under either section 6550 or Penal Code section 4011.6, whichever was appropriate (*In re Mary T.*, *supra*, 176 Cal.App.3d at p. 43 [Pen. Code, § 4011.6]; *James H.*, *supra*, 77 Cal.App.3d at p. 177 [§ 6550]). Rather than issuing a 90-day commitment order, the appropriate step at that time would have been to refer Patrick to a facility for 72-hour treatment and evaluation.[12]

Three months later, in February 1996, Napa State Hospital reported that the minor was not yet competent to stand trial and recommended continued retention at that facility for further care and treatment. At a March hearing, defense counsel asked the court to reconsider its procedures, to follow *James H.* and, in terms of treatment for his client, asked the court to transfer Patrick's case to Los Angeles to allow that juvenile court to find an appropriate placement pursuant to LPS procedures. Although defense counsel was commended for the quality of his argument, the court in the short run maintained the status quo.

More evaluations and hearings followed. Although the prosecution eventually agreed with the defense concerning the procedural issues, the juvenile

---

[12]Although defense counsel made his position clear to the juvenile court, he did not test that position by seeking timely review of the November 21, 1995, order in this court. In *James H.*, for example, the Court of Appeal granted a petition for writ of mandate to enforce the procedures formulated in that opinion. (*James H.*, *supra*, 77 Cal.App.3d at pp. 177-178.)

court in the meantime had become concerned about the status of the pending section 602 proceedings if the LPS procedures were followed.

Concerning the status of the pending section 602 proceedings, the two statutory schemes cited in section 705 seem to be in conflict. Under section 6551, the jurisdiction of the juvenile court is *suspended* during the time the minor is subject to the jurisdiction of the court in which the LPS petition is filed. (§ 6551; see fn. 5, *ante*.) Under Penal Code section 4011.6, however, the juvenile court may retain *concurrent* jurisdiction over the minor during the LPS proceedings. (Pen. Code, § 4011.6; see fn. 6, *ante*.)

In *In re Robert B.* (1995) 39 Cal.App.4th 1816 [46 Cal.Rptr.2d 691], Division One of this court dealt with some of the conflicts in those sections. It concluded that section 6551 and Penal Code section 4011.6 "should be considered complementary, rather than as providing alternative procedures. Together, the sections authorize the juvenile court to refer persons within its jurisdiction for 72-hour evaluation or treatment after which, in appropriate cases, the provisions of the LPS Act may be invoked, pursuant to which the minor may be detained in a mental health facility for a longer period of time." (*In re Robert B.*, *supra*, 39 Cal.App.4th at pp. 1822-1823.) Reconciling the sections, the court held: "The juvenile court retains concurrent jurisdiction over the minor during the LPS proceedings, unless the person in charge of the facility determines that arraignment or trial would be detrimental to the well-being of the minor. In such a case the juvenile court's jurisdiction is suspended during such time as the minor is subject to the jurisdiction of the court overseeing the LPS proceedings." (*Id.* at p. 1823.)

In this case, the juvenile court was on notice that the mental health agencies were reluctant to proceed under LPS so long as the court retained a Penal Code section 1370 hold over Patrick. In its LPS evaluation, the county mental health department stated its opinion should be "considered hypothetical" since Patrick was currently committed under Penal Code section 1370. At the May 20, 1996, hearing, the county community program director told the court there would be a problem if it ordered Los Angeles authorities to file a conservatorship petition "in that Los Angeles County won't do that as long as the other hold is in effect." Defense counsel suggested the commitment order needed to be withdrawn. But the juvenile court remained apprehensive that Patrick could be released before Los Angeles agencies could act. Thus, in ordering that the Los Angeles Department of Health and Human Services file a section 5150 conservatorship petition within 10 days, the

juvenile court also ordered that Patrick "continue to be held pursuant to Section 1370 PC as previously ordered."[13]

To the extent the juvenile court continued its order that Patrick remain committed pursuant to Penal Code section 1370, it erred. In an adult proceeding, a finding of present incompetence results in an immediate suspension of the criminal proceedings and the next issue is simply whether the defendant should be confined in a state hospital or other facility or be placed on an outpatient status. (Pen. Code, § 1370, subd. (a)(1), (2).) But a finding of incompetence in a juvenile proceeding should not result in a confinement order or its equivalent. (*In re Mary T.*, *supra*, 176 Cal.App.3d at p. 43.) In effect, a juvenile is not committed as incompetent to proceed with section 602 proceedings, but on a wholly independent basis and after wholly independent procedures. (*In re Mary T.*, *supra*, at p. 44.) At the time of the May 20, 1996, order, Patrick had already spent six months at the state hospital under the guise of Penal Code section 1370 "for the purpose of being treated in order to regain his trial competency," notwithstanding the fact that the mental health experts and the court thought it unlikely he would ever reach the required level of competency. Once Patrick was found incompetent, the juvenile court should have referred him for an early evaluation for possible initiation of LPS civil commitment proceedings. (See §§ 705, 6550; Pen. Code, § 4011.6.)

We conclude that the portion of the juvenile court's order of May 20, 1996, providing for Patrick's continued commitment pursuant to Penal Code section 1370, must be set aside. The juvenile court may retain its jurisdiction over the minor while he is subject to the LPS proceedings. If the minor is detained in a facility pursuant to LPS and if the person in charge of that facility determines that further section 602 proceedings would be detrimental to Patrick's well-being, the juvenile court should then suspend its jurisdiction for such time as the minor is subject to the jurisdiction of the court overseeing the LPS proceedings. (Pen. Code, § 4011.6; see *In re Robert B.*, *supra*, 39 Cal.App.4th at p. 1823.)

## IV. CONCLUSION

That portion of the juvenile court's May 20, 1996, order providing for continued commitment of the minor pursuant to Penal Code section 1370 is set aside. In all other respects, the order is affirmed. Unless otherwise ordered by the Napa County Juvenile Court, that court may retain

---

[13]On November 21, 1995, the juvenile court had previously ordered that Patrick remain committed to Napa State Hospital "pursuant to Section 1370 of the Penal Code . . . for the purpose of being treated in order to regain his trial competency."

jurisdiction over the minor concurrently with the court exercising jurisdiction over the minor pursuant to section 5150.

Anderson, P. J., and Poché, J., concurred.