Filed 6/27/14  In re Carlos M. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re CARLOS M., a Person Coming Under the Juvenile Court Law. | B248070<br>(Los Angeles County<br>Super. Ct. No. VJ41960) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS M.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Stephanie M. Davis, Referee.  Affirmed as modified.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Carlos M. appeals from orders of the juvenile court, sustaining a petition under Welfare and Institutions Code section 602, declaring him to be a ward of the court, and ordering him placed at home on probation. He challenges the sufficiency of the evidence supporting some of the counts in an 11-count petition alleging sex crimes committed against his two minor nieces and a minor nephew while he also was a minor. We affirm, modifying the true finding on one count to reflect a lesser included offense, as explained below.

## BACKGROUND

The victims in this case, M.M., A.R. and R.R., are Carlos's nieces and nephew, respectively. A.R. and R.R. are siblings. Their mother is Carlos's sister. M.M.'s father is Carlos's brother.

On January 14, 2013, the Los Angeles County District Attorney filed a second amended petition under Welfare and Institutions Code section 602, alleging:

Count 1: On or between January 24 and April 24, 2009, when Carlos was 16-17 years old,[1] Carlos committed forcible oral copulation, in violation of Penal Code section 288a, subdivision (c)(2)(A),[2] against M.M.

Count 2: On or between April 24, 2005 and April 24, 2008, when Carlos was 13-16 years old, Carlos participated in an act of sodomy, in violation of section 286, subdivision (b)(2), with M.M.

Counts 3, 4, and 5: On or between April 24, 2005 and April 24, 2008, when Carlos was 13-16 years old, Carlos committed forcible rape, in violation of section 261, subdivision (a)(2), against M.M.

---

[1] Carlos was born in early March 1992. M.M. is three years younger than Carlos.

[2] Statutory references are to the Penal Code unless otherwise indicated.

Counts 6, 7, and 8:  On or between August 27, 2006 and August 27, 2009, when Carlos was 14-17 years old, Carlos committed forcible rape, in violation of section 261, subdivision (a)(2), against A.R.[3]

Count 9:  On or between April 24, 2005 and April 24, 2006, when Carlos was 13-14 years old, Carlos committed a lewd act upon a child, in violation of section 288, subdivision (a), with M.M.

Count 10:  On or between August 27, 2006 and August 27, 2009, when Carlos was 14-17 years old, Carlos committed continuous sexual abuse of a child, in violation of section 288.5, subdivision (a), against A.R.

Count 11:  On or between July 27, 2005 and July 27, 2006, when Carlos was 13-14 years old, Carlos committed forcible oral copulation, in violation of section 288a, subdivision (c)(2)(A), against R.R.[4]

M.M., A.R. and R.R. testified at the adjudication hearing, held on various days from January 24, 2013 through February 11, 2013.  At the time of the adjudication hearing, M.M. was 17, A.R. was 14, and R.R. was 16 years old.

**M.M.**

M.M. was about 10 and one-half years old and in the fifth grade when the incidents alleged in this case first began.  During her fifth and sixth grade years, she moved back and forth between the homes of her grandmother and her aunt J.R. (A.R. and R.R.'s mother).  Her uncle Carlos, who was three years older than her, lived at the home of his mother (the three victims' grandmother), but usually stayed at the home of his sister J.R. (and niece A.R. and nephew R.R.) on weekends and during vacations from school.  Thus, M.M. and Carlos often stayed at the same home.  When M.M. was 12, she and her mother moved to Tennessee.

---

[3] A.R. is six years younger than Carlos.

[4] R.R. is four years younger than Carlos.

When M.M. was between 10 and one-half and 11 years old, Carlos taught her how to get high by inhaling air freshener. She "liked it," and continued to inhale air freshener, and believed she became "addicted to it."

Around the time Carlos taught M.M. to inhale air freshener, he also began to touch her inappropriately. The first incident (count 9) occurred when she was about 10 and one-half years old. M.M. was in her aunt J.R.'s bedroom, watching television with her cousins A.R. and R.R. and her brother A.[5] Carlos "kicked out" R.R. and A., and "closed the door," leaving it open only a "crack." Then Carlos got under the covers with M.M. and A.R., who were already lying on the bed. Carlos touched M.M.'s vagina with his fingers for about 20 minutes, first over her clothes, and then under her clothes and inside her vagina. M.M. told Carlos to stop, but he did not listen to her. She tried to push his hands away but he continued to try to touch her. M.M. felt "disgusting" when Carlos did this to her because he was her uncle and she did not want him to touch her like that. During this same incident, Carlos also touched A.R. under the covers while M.M. looked away.

M.M. did not tell anyone immediately that Carlos had touched her inappropriately because she was scared no one would believe her. Moreover, Carlos threatened to turn her cousins against her and to tell her parents she used air freshener if she told anyone about the incident. Similar incidents of Carlos touching M.M. and A.R. began to occur regularly. M.M. recalled that nearly every day, Carlos wanted to touch her and A.R., and wanted to have them "suck his penis."

On about 20 occasions between the time M.M. was 10 and one-half and 12 years old, Carlos tried to insert his penis into her vagina (counts 3-5). These incidents usually proceeded in the same way. Carlos, R.R., A., M.M. and A.R. would be playing in R.R.'s room, which was a garage converted into a bedroom. Carlos would instruct R.R. and A. to go play video games in a part of the room where they could not see the bed. Carlos would take M.M. and A.R. to the bed. He would order M.M. to lie beside A.R. while he

---

[5] M.M.'s brother A. also stayed at their aunt J.R.'s home sometimes.

4

touched A.R. M.M. would hear A.R. saying "'no,'" and making sounds indicating Carlos was hurting her. M.M. would feel scared and she would close her eyes because she "knew he was going to come to [her] next."

When Carlos finished with A.R., he would begin touching M.M.'s vagina while he touched his penis. Then he would climb on top of M.M. and try to insert his penis into her vagina. M.M. would repeatedly say "'stop'" and "'no.'" She felt pain as Carlos tried to insert his penis into her vagina. M.M. testified that Carlos "would touch [her] really ugly," meaning "hard." During about five of these 20 incidents, Carlos was able to insert his penis into M.M.'s vagina.[6]

On one occasion when M.M. was 10 and one-half years old, Carlos inserted his penis into her "butt" (count 2). During a party at the apartment complex where her grandmother (Carlos's mother) lived, M.M. went upstairs to her grandmother's room to change her clothes. Carlos followed her into the room. There was no one else in the apartment. Carlos "threw" her onto the bed, pulled down her pants and "put his penis inside [her] butt." She felt severe pain. She "was screaming" and "telling him to stop," but he continued. When it was over, she went to the bathroom and discovered that her "butt" was bleeding.

As set forth above, M.M. and her mother moved to Tennessee when M.M. was 12 years old. A couple of years later in October 2009, when M.M. was 14 years old, she returned to California to visit her father. She stayed at her aunt J.R.'s home. One night while M.M. was there, Carlos knocked on the outside of A.R.'s window between 11:00 p.m. and 12:00 a.m. Then he opened the window and climbed into A.R.'s bedroom. Carlos pulled out his penis and told A.R. and M.M., "'Y'all going to suck my dick.'"

_____

[6] M.M. also testified about a particular incident which occurred in the summertime when she was 11 years old and spending the night in a large tent in her aunt J.R.'s backyard with Carlos, R.R., A., and A.R. After R.R. and A. went to sleep, Carlos began touching A.R. and then he climbed on top of A.R. When Carlos finished with A.R., he began touching M.M. and tried unsuccessfully to insert his penis into M.M.'s vagina. M.M. cried during this incident.

5

Then he grabbed A.R. by the back of the head, pulled her off the bed, and brought her head down to his penis. Carlos moved A.R.'s head around while his penis was in her mouth. M.M. heard A.R. saying, "'No. I don't want to. I don't want to.'"

When Carlos finished with A.R., he grabbed M.M. by the hand and pulled her off the bed. Then he put his hand on the back of her head and brought her head down to his penis. M.M. tried to pull her head backward, but Carlos was stronger than her. Carlos held her hair and moved her head around while his penis was in her mouth (count 1). When he finished, he left A.R.'s room through the window.

**A.R.**

When A.R. was seven or eight years old, her uncle Carlos taught her how to get high by inhaling air freshener and also began to touch her inappropriately. The sexual abuse continued until she was at least 10 years old. At around that time, Carlos started dating a girlfriend and he stopped touching A.R.

Whenever Carlos slept at A.R.'s house during weekends or school vacations, he would put his penis inside her vagina (counts 6-8 & 10). This happened more than 10 times. "A couple of times," M.M. was present, but usually A.R. and Carlos were alone. Carlos would come to her room while she was lying in bed and pull down her pants and underwear. She would "tell him no" and try to push him away, but "he would tell [her] to be quiet" and continue what he was doing. He would climb on top of her and pull down his shorts, then insert his penis into her vagina multiple times. When he was finished, "[h]e would pull his pants up and leave." Carlos told A.R. that if she told anyone about the sexual abuse, he would tell her mother (his sister J.R.) that she used air freshener and she would "get in trouble."

Sometimes when A.R. "was sleeping in the garage" (R.R.'s room), she would see Carlos "doing things to" M.M. She would see Carlos "on top of" M.M., and she would see M.M. "suck" Carlos's penis.

On more than 10 occasions when A.R. was between the ages of eight and 10, Carlos forced A.R. to "suck" his penis. This would occur during the night or when A.R.'s parents went out and left Carlos "in charge" of her and R.R. Carlos would grab

6

A.R.'s head with his hands and pull it down to his penis. A.R. would try to pull her head away but Carlos was stronger than her. She would tell Carlos to stop, but he would continue until he was finished. A.R. recalled a particular incident when she was spending the night in a tent in her backyard with R.R., A., M.M. and Carlos, and Carlos forced her and M.M. to suck his penis.

When A.R. was 13 years old, she told her parents that Carlos had touched her inappropriately. At that time, she was in trouble with her parents because they found out she snuck out of her house at night to see a male friend. They brought her to the police station to teach her a lesson. Before going inside the station, she was sitting in the car with her parents when her father asked her if anyone had ever touched her. At first she remained silent and did not answer the question, but then she told them her uncle Carlos had touched her. A.R. and her parents left the parking lot of the police station and went to A.R.'s grandmother's home to tell her about what Carlos had done to A.R. Later that day, A.R. and her parents returned to the police station and A.R. spoke to an officer about the sexual abuse. An investigation commenced.

**R.R.**

When R.R. was about nine years old, his uncle Carlos taught him how to inhale air freshener. R.R. was nervous about trying it. Carlos told him if he did not try it Carlos would make up a lie to get him in trouble. R.R. continued to use air freshener for at least a year. He would go to liquor stores with Carlos to steal cans of air freshener.

Also when R.R. was nine years old, he and Carlos took showers together. On one occasion, when they were exiting the shower, Carlos told R.R. "to suck his penis." "[A]t first," R.R. "said no," but then Carlos told R.R. that he would do the same thing to R.R. R.R. knelt down, but he "hesitated" because he "didn't really want to" do it. Carlos grabbed the back of R.R.'s head and placed his penis in R.R.'s mouth. Carlos moved his penis back and forth in R.R.'s mouth while holding the back of R.R.'s head with one hand. R.R. felt "uncomfortable." "Less than a minute" after Carlos placed his penis in R.R.'s mouth, R.R. pulled his head away and stopped sucking Carlos's penis. R.R. stood up and Carlos sucked R.R.'s penis. R.R. could not recall whether he wanted Carlos to do

7

that to him. After it was over, Carlos and R.R. never talked about the incident and it never happened again.

Around the time of this incident, when R.R. was nine, R.R. used to spend the night in the garage play room of his home with Carlos, M.M. and A.R. R.R. would often see Carlos under the covers with either M.M. or A.R. R.R. could not see what was happening under the covers because whenever he looked Carlos would tell him "to go away." R.R. would comply because Carlos would threaten to get him in trouble if he did not go away. R.R. would "usually" hear M.M. telling Carlos to "stop." R.R. saw M.M. under the covers with Carlos on more than 20, and possibly more than 30, occasions during a period of six months to a year.

Over the years, R.R. would have bad dreams about the incident that occurred between him and Carlos after the shower. After one of those dreams, when he was 14 or 15 years old, he told his girlfriend about what had happened with Carlos. He had never told anyone else about it up to that time.

**Carlos**

Carlos testified at the adjudication hearing. He denied ever having "sexual contact" with A.R., M.M. or R.R. He also denied ever showing any of them how to get high on air freshener or using it with them.[7]

The juvenile court sustained the petition, finding all 11 counts to be true. At the disposition hearing on February 25, 2013, the court declared Carlos to be a ward of the court under Welfare and Institutions Code section 602, ordered him placed at home on probation, and declared all counts to be felonies.

---

[7] Carlos called his sister J.R., her husband, a deputy sheriff and a detective to testify in his defense. It is not necessary for us to summarize the testimony of these witnesses in deciding the issues on appeal.

8

## DISCUSSION

**Count 2**

In count 2 of the second amended petition, Carlos was charged with participating in an act of sodomy with M.M. in violation of section 286, subdivision (b)(2). This statutory provision requires that the defendant be over 21 years of age and the victim be under 16 years of age at the time the act of sodomy occurs. (§ 286, subd. (b)(2).) Carlos challenges the sufficiency of the evidence supporting the juvenile court's true finding on count 2 on the ground he was not over 21 years of age when the act occurred. The Attorney General concedes the evidence establishes Carlos was "was no older than 16 at the time." Carlos does not challenge the sufficiency of the evidence demonstrating that he participated in an act of sodomy with M.M. during the timeframe alleged in count 2 or that M.M. was under 16 years of age at the time.

As the Attorney General argues in her respondent's brief, and Carlos agrees in his reply brief, the appropriate remedy is to modify the adjudication order to reflect a true finding on count 2 on the lesser included offense of sodomy with a person under 18 years of age, a violation of section 286, subdivision (b)(1). "Section 1181, subdivision 6 provides that a trial court may grant a new trial '[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed . . . .' [¶] Section 1260 provides that '[t]he court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed . . . and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances.'" (*People v. Bailey* (2012) 54 Cal.4th 740, 748, fn. 3.)

We modify the adjudication order to reflect a true finding on count 2 on the lesser included offense of sodomy with a person under 18 years of age, a violation of section

9

286, subdivision (b)(1). Based on this modification of the adjudication order, we have no cause to reverse the disposition order, and Carlos does not argue otherwise.

**Count 11**

Carlos challenges the sufficiency of the evidence supporting the juvenile court's true finding on count 11 alleging forcible oral copulation, in violation of section 288a, subdivision (c)(2)(A), against R.R. Carlos argues the prosecution failed to present evidence demonstrating he accomplished the act against R.R.'s "will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person," within the meaning of section 288a, subdivision (c)(2)(A).

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] '"Although it is the duty of the [trier of fact] to acquit a defendant if it finds the circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]"' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

10

To establish forcible oral copulation in violation of section 288a, subdivision (c)(2)(A), the prosecution must prove the "defendant accomplished an act of oral copulation by the use of force sufficient to overcome the victim's will." (*People v. Guido* (2005) 125 Cal.App.4th 566, 576.) The prosecution is not required to prove the use of force prevented the victim from physically resisting the defendant. (*Ibid.*)

R.R. testified that, after kneeling down, he hesitated because he did not want to orally copulate Carlos. Carlos grabbed the back of R.R.'s head and placed his penis in R.R.'s mouth. Carlos continued to hold the back of R.R.'s head while he moved his penis back and forth in R.R.'s mouth. Substantial evidence demonstrates Carlos used force sufficient to overcome R.R.'s will to accomplish the act of oral copulation. R.R. did not voluntarily take Carlos's penis into his mouth. Carlos used force to place it there.

### *Gladys R.* Requirements

Children under 14 years of age are deemed incapable of committing crimes unless there is "clear proof that at the time of committing the act charged against them, they knew its wrongfulness." (§ 26.) Where a petition alleges a minor under 14 years of age has committed a crime, to comply with section 26, the prosecution must prove by clear and convincing evidence that the minor understood the wrongfulness of his conduct when he committed the charged act. (*In re Manuel L.* (1994) 7 Cal.4th 229, 232-234, 239; *In re Gladys R.* (1970) 1 Cal.3d 855, 858, 862-867.)

Carlos challenges the juvenile court's true findings on the count of sodomy and the three counts of forcible rape against M.M., and the count of forcible oral copulation against R.R., arguing "a fair reading of the record suggests that there was a high probability that appellant was under fourteen [14] years old at the time that . . . [these] offenses were committed" and "the record appears to be silent with respect to any proof that appellant understood the nature of his actions as wrongful." "We review the whole record most favorably to the judgment to determine whether there is substantial evidence--that is, evidence that is reasonable, credible, and of solid value--from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.)

11

As our Supreme Court has stated, "'"it is only reasonable to expect that generally the older a child gets and the closer [he] approaches the age of 14, the more likely it is that [he] appreciates the wrongfulness of [his] acts." [Citation.]' [Citation.]" (*People v. Cottone* (2013) 57 Cal.4th 269, 281.) "In determining whether the minor knows of the wrongfulness of his conduct, the court must often rely on circumstantial evidence [citation] including the minor's age, experience and understanding, as well as the circumstances of the offense including its method of commission and concealment [citation]." (*In re Jerry M.*, *supra*, 59 Cal.App.4th at p. 298.) The issue of the minor's appreciation of the wrongfulness of his conduct may be tried together with the issue of whether the minor committed the charged act. In deciding whether the minor understood the wrongfulness of his conduct, the juvenile court may consider evidence presented to prove commission of the charged act. (*In re Cindy E.* (1978) 83 Cal.App.3d 393, 400-401.)

To the extent Carlos was under 14 years of age at the time he committed acts of sodomy and forcible rape against M.M. and the act of forcible oral copulation against R.R., substantial evidence supports a finding by clear and convincing evidence that he understood the wrongfulness of his conduct when he committed the acts. It is undisputed that he was 13 and one-half years old, at the youngest, at the time he committed these acts, old enough to understand it was wrong to commit sex acts against his 10-and-one-half-year-old niece and nine-year-old nephew.

Moreover, Carlos's conduct before and during the sex acts with M.M. demonstrates he knew what he was doing was wrong. The evidence establishes he took measures to ensure no one other than the children would find out about the sex acts with M.M. Before committing the acts, he would send R.R. and A. away so they could not see what he was doing to M.M. Carlos would threaten to get R.R. in trouble if he did not go away. Carlos also threatened to turn M.M.'s cousins against her and tell her parents she was getting high on air freshener if she told anyone what he was doing to her. The evidence also establishes Carlos continued to engage in the acts even when M.M. made clear he was hurting her and she was not consenting. During the acts, M.M. repeatedly

said "'stop'" and "'no,'" but Carlos did not stop until he was finished.  M.M. screamed in pain during the act of sodomy, but Carlos continued to sodomize her.

As discussed above, substantial evidence establishes that Carlos resorted to use of force when R.R. indicated he did not want to orally copulate Carlos.  On these facts, it is inconceivable that Carlos did not understand at 13 and one-half years old that grabbing the back of his nine-year-old nephew's head and placing his penis inside his nephew's mouth was wrong.

### DISPOSITION

The adjudication order is modified to reflect a true finding on count 2 on the lesser included offense of sodomy with a person under 18 years of age, a violation of section 286, subdivision (b)(1).  As so modified, the adjudication order is affirmed.  The disposition order is affirmed.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:


JOHNSON, J.


MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.